400 So.2d 146 (1981)
David L. TINGLER, Appellant,
v.
CITY OF TAMPA, a Municipal Corporation, Appellee.
No. 80-1253.
District Court of Appeal of Florida, Second District.
June 17, 1981.
W. Eric Venable of W. Eric Venable, P.A., Tampa, for appellant.
Joseph G. Spicola, Jr., City Atty., and James A. Sheehan, Asst. City Atty., Tampa, for appellee.
HOBSON, Acting Chief Judge.
Appellant Tingler, a former police officer, appeals the trial court's order denying him relief on his complaint seeking to require the City of Tampa to accept his application for a line-of-duty disability pension and pay him line-of-duty disability benefits. We reverse.
Appellant was employed by the City of Tampa Police Department in 1971 and consistently received good to above average job *147 evaluations. Shortly after being employed, he entered into a pension contract which provided as follows:
Any member who in the service has received or shall receive within the City any injuries, disease, or disability which injury, disease, or disability now permanently incapacitates him physically or mentally from regular and continuous duty as a firefighter or police officer, then he shall receive in equal monthly installments an amount equal to 65% of monthly salary in effect at date of disability retirement... .
On November 14, 1978, appellant applied for a line-of-duty disability pension which was denied by the Pension Board. He was terminated November 26, 1978, because of incompetence, in that he was "inefficient in the conduct of his duties due to a non-correctable mental health problem." Appellant then brought action to enforce his pension contract. The trial court's order denying appellant relief provided in pertinent part as follows:
1. The plaintiff, DAVID TINGLER, did not suffer from an injury or disease while in the service as defined in section 7(b) of the City of Tampa Firefighters and Police Officers Pension Contract.
2. Whatever disability the plaintiff presently suffers from is due to a pre-existing condition.
3. The stress of his job as a Police Officer did not cause the plaintiff's disability, it revealed it.
It is therefore, ORDERED AND ADJUDGED as follows:
The Plaintiff did not suffer an injury, disease or disability while in the service of the City of Tampa which now permanently incapacitates him physically or mentally from regular or continuous duty as a firefighter or police officer.
The medical evidence upon which the trial court made its decision was as follows:
In 1977, appellant began to complain of mild headaches towards the end of his work shift. His condition deteriorated during late 1977 and 1978 as the headaches became more severe and began earlier in the work day. He began to have muscle cramps and rectal bleeding. On August 26, 1978, appellant was called to investigate a domestic quarrel. The situation became critical when an adult male at the scene pulled a knife. Appellant drew his gun in an unsteady manner and allowed a child to walk past him into the room with the armed man. The man grabbed the child and held a knife to his throat. Appellant, with his gun raised, began to sweat, his hands shook and he stated that he thought he was going to pass out. Finally, he allowed a woman to walk up and take the knife away from the man. In attempting to subdue the man, appellant stated that he was just "hanging on to the man" and not aiding his partner as he knew he should have done. Appellant stated that he was frightened of the unarmed man who was much smaller than himself.
After this incident, appellant's condition rapidly declined and, in addition to the prior symptoms, he began to avoid calls on his radio and would hide while on duty.
Prior to the August incident, appellant's wife had been a patient of Dr. Mundorff, a psychologist. In the course of his wife's treatment, appellant had complained to Dr. Mundorff about his headaches and muscle cramps. Dr. Mundorff had suggested that he go to the Veteran's Administration Hospital for a physical examination. Appellant had taken this advice and arranged for tests to be conducted at the hospital on August 30, some two days after the domestic incident.
Dr. Mundorff testified at trial that in September, 1978, appellant appeared at Dr. Mundorff's home, visibly shaken and in substantial distress. Appellant advised the doctor that his headaches had become more severe, he was unable to sleep, and he was having severe cramps in his legs and upper shoulders. Dr. Mundorff stated that he examined appellant's neck, back and shoulders, and found them "like steel." He advised appellant to have more tests performed at the Veteran's Administration Hospital to rule out any possible physical causes for his problems. Appellant was extensively *148 tested at the hospital and returned to Dr. Mundorff who referred him to Dr. Muniz, a psychiatrist at the Veteran's Administration Hospital.
Dr. Muniz testified that he first saw appellant in October, 1978. He diagnosed the problem as psychophysiological musculoskeletal disorder and passive aggressive personality. Dr. Muniz concluded that appellant's job as a police officer was an important factor in his condition, particularly problems with his supervisors, resulting from appellant's union activities.
Shortly thereafter appellant terminated his association with Dr. Muniz and returned to Dr. Mundorff's care. Dr. Mundorff advised appellant that he would have to take some time off work. Appellant took sick leave on November 1, 1978. His condition did not dramatically improve and Dr. Mundorff then advised him to take more time off. Appellant informed the doctor that he had been told to return to work or he would be fired. Dr. Mundorff advised him that he could not return to work.
Dr. Mundorff stated at trial that, in his opinion, appellant was suffering from a psychological reaction of the musculoskeletal system. He did not believe appellant was capable of returning to work and stated that appellant was disabled from performing his duties as a police officer. Dr. Mundorff explained that appellant's anxiety had been building up over a period of time, probably a year and a half. The cause was attributed to the day-to-day stress appellant encountered as a police officer.
Dr. Afield, in a letter addressed to the police department in November, 1978, stated that appellant was no longer capable of carrying out his duties as an officer "due to the pressures of his job and the long term anxious condition that the job has intrinsically fostered." Approximately one year later Dr. Afield submitted another letter, stating in part, "I do not see this man as being disabled." By deposition, Dr. Afield denied having read the first letter before signing it. He stated that, based upon a review of Dr. Mundorff's notes and two office visits with appellant, he did not believe that appellant was permanently disabled. Nevertheless, Dr. Afield said that he would defer to Dr. Mundorff's opinion concerning appellant's mental state during the period of time Dr. Mundorff was treating appellant.
In March, 1979, appellant was referred to Dr. Joffee, a psychiatrist, for evaluation. Dr. Joffee stated in deposition that appellant's stress problems were directly related to his duties as a police officer. She stated that she had interviewed appellant on two occasions and had determined that he had a pre-existing condition which was aggravated by the domestic incident in August and which rendered him no longer functional as a police officer.
In March 1980, appellant was examined by Dr. Sprehe, a psychiatrist. Dr. Sprehe stated by deposition that appellant's chronic anxiety reaction was, at least partly, a result of the domestic incident in August and that appellant suffered from an underlying psychological weakness. The domestic incident was described as the "precipitating event" which caused appellant's rapid decline.
Dr. Forman, a psychiatrist, interviewed appellant in November, 1979. He stated in deposition and in direct testimony at trial that he found it difficult to relate appellant's problem to any specific job problem. He felt that there were outside factors which caused more stress than appellant's job. Dr. Forman agreed that appellant had a predisposition to this type of psychiatric problem, but thought that appellant was not permanently disabled. He further stated that he did not believe that appellant was capable of performing the duties of a police officer from a psychiatric standpoint.
Each medical expert stated that there were several other stress related factors which might have contributed to the severity of appellant's psychiatric problem. Only Dr. Forman felt that the outside stress factors were more responsible than the job stress factors. Dr. Mundorff was the only expert who stated that he had treated appellant over an extended period of time. *149 The other doctors had interviewed appellant over short periods of time.

DISCUSSION
We construe the trial court's finding in paragraphs (2) and (3) of the final order to mean that appellant's disability is due to a pre-existing condition which was aggravated by the stress of his job as a police officer. An extensive review of the record on appeal convinces us that the trial court had sufficient evidence before it to make this finding. We disagree, however, with the final holding that appellant did not suffer from a disability "while in the service." Every medical expert agreed that appellant could not return to his duties as a police officer because of his psychological problems. The experts disagreed on the impact which job stress had on appellant's condition. Some of the experts were of the opinion that job stress alone was the aggravating circumstance while others felt that job stress in conjunction with other factors led to the disability. One doctor testified that, in his opinion, appellant was not disabled, but agreed that appellant could not, from a psychiatric viewpoint, return to his job as a police officer.[1]
We note the similarity between the facts of the instant case and Division of Retirement v. Allen, 395 So.2d 1192 (Fla. 1st DCA 1981). In that case, Clarence Allen, a correctional officer at Florida State Prison, suffered a stroke and retired due to his inability to perform his employment duties. The Division of Retirement found him to be totally and permanently disabled and granted him regular disability benefits, but denied him line-of-duty benefits. Allen appealed to the Retirement Commission and, after hearing, the Commission found him to be "totally and permanently disabled as a result of the mental and physical effects of the stroke." The Commission concluded that the stroke was caused by stress from Allen's job and ordered that line-of-duty retirement benefits be granted to him.
On appeal, the First District Court noted that Allen's treating psychologist had testified that Allen's mental disability was directly related and caused by the stressful circumstances under which he was working. Another doctor stated that Allen's illness, considering his personality, was a reaction to job stress. The Division of Retirement argued that the Commission was required to apply the "arising out of" test developed under worker's compensation law. The appellate court noted that Allen's benefits were conferred under section 121.021(13), Florida Statutes, which defined disability in the line of duty as an "injury or illness arising out of or in the actual performance of duty required by a member's employment during his regularly scheduled working hours or irregular hours as required by the employer." The court held the worker's compensation cases inapplicable because, "under Chapter 440, compensation is payable only for an `injury' arising in a certain way while section 121.021(13) is broader and defines disability in the line of duty as an `injury or illness' arising out of employment."
In the instant case, the provision of the pension contract applies to "Any member who in the service has received ... any... disability which ... now permanently incapacitates him physically or mentally from regular and continuous duty... ." The subject provision does not exclude disabilities which arise from the aggravation of a pre-existing condition. Further, we agree with the First District Court that this type of provision is broader than the "arising out of" language in the Worker's Compensation Act. Thus, where the testimony before the trial court showed that appellant cannot return to his job as a police officer, we hold that appellant has shown a permanent disability. When that disability is "revealed" *150 by the stress of appellant's job, notwithstanding the pre-existing condition, we hold that it was received "in the service" and entitles appellant to disability benefits.
REVERSED.
RYDER and DANAHY, JJ., concur.
NOTES
[1] The medical experts' depositions were initially taken in preparation for appellant's workmen's compensation claim. For that reason, the various doctors placed greater emphasis on the impact of the domestic incident in August 1978 than was necessary for the instant claim. It is not crucial to the resolution of this case to determine whether one specific incident precipitated appellant's disability. We review the medical evidence with an eye toward the impact of general job stress on appellant's disability.