James D. HESTER, Appellant,

v.

STATE of Alaska, PUBLIC EMPLOYEES' RETIREMENT BOARD, Appellee.

No. S–3559.

Supreme Court of Alaska.

Sept. 6, 1991.

---

Chancy Croft, Anchorage, for appellant.

Virginia B. Ragle, Asst. Atty. Gen. and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

James D. Hester appeals the denial of his claim for occupational disability benefits under the Public Employees' Retirement System (PERS). Hester served as the chief of police in Skagway and then in North Pole, Alaska. He resigned in 1985 as a result of the disabling symptoms of Crohn's disease, a chronic inflammatory bowel ailment, from which he suffers. In his application for occupational disability benefits, Hester did not claim that his work caused the disease. Instead, he claimed that the stress of his job caused the disabling flare-ups of the disease. According to Hester, but for his job he would have been able to manage the effects of his Crohn's disease. The superior court upheld the Public Employees' Retirement Board's denial of occupational benefits. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Hester was first diagnosed as having Crohn's disease in 1968 when he was working as a police officer in San Gabriel, California. He experienced severe abdominal cramps and fever, but these symptoms subsided after a brief period of treatment with steroids. Hester remained symptom-free until 1977.

A job-related motorcycle accident in 1970 rendered Hester physically unable to engage in active patrol work. He worked in various security and private investigator positions until January 26, 1976, when he accepted employment as chief of police in Skagway, Alaska. In 1977 Hester suffered another onset of abdominal cramping and fever. He took steroids to control the condition and underwent surgery in 1982. Following minimal time off work, Hester recovered and returned to full-time police work in Skagway.

In April 1983, Hester accepted a new position as police chief in North Pole, Alaska. According to Hester, he moved so that his ten-year-old daughter could participate in the larger school system of the Fairbanks North Star Borough and so that he could work in a less stressful environment. Hester believed the position in North Pole would be less demanding because the department there had more officers and therefore he would have to work less overtime, the department had a 24-hour dispatch center, and the Alaska State Troopers were available for emergency backup and assistance.

Hester's Crohn's disease was asymptomatic from October 1982 until January 1984. In January 1984, however, he suffered a new onset of symptoms. This flare-up coincided with a stressful personnel problem that Hester had to deal with in the police department. The mayor insisted that Hester fire an officer against whom Hester felt there were insufficient grounds for dismissal. Hester consulted with William H. Doolittle, M.D., of Fairbanks, on February 3, 1984. Thereafter, Dr. Doolittle followed Hester's condition regularly, with visits of no less than once a month.

In response to Dr. Doolittle's treatment, the condition remained under control until April 1985. At this time, Hester experienced another stressful situation at work and a recurrence of his symptoms. He resumed steroid treatment. On May 3,

1985, he resigned his position as chief of police on the advice of Dr. Doolittle. Since his resignation, Hester has continued to suffer cramping, diarrhea and weight loss.

On May 9, 1985, Hester filed for occupational disability benefits under AS 39.35.-410. Alaska Statute 39.35.410 provides public employees benefits if they can no longer work because of a total and apparently permanent occupational disability.[1] The Administrator of the Division of Retirement and Benefits (administrator) denied Hester's application.[2]

Hester appealed the administrator's decision to the Public Employees' Retirement Board (PERB). Pursuant to AS 39.36.010, PERB requested advice from the Public Employees' and Teachers' Disability Review Board (DRB). DRB was created in 1982 to provide "expert review of applications for disability benefits."[3] AS 39.36.-010. DRB recommended that Hester be found not entitled to occupational disability benefits.

After hearing testimony from Hester and Dr. Doolittle, PERB affirmed the denial of occupational disability benefits. PERB's conclusion reads, in part:

> [T]he condition suffered by Mr. Hester is Crohn's disease, and the evidence has not proven that Crohn's disease was proximately caused by an injury sustained or hazard undergone by Mr. Hester in the performance of his duties as a police officer.

Hester appealed the decision to the superior court. AS 22.10.020(d); AS 44.62.-560(a); Alaska R.App.P. 601. Judge James R. Blair reversed PERB's decision, concluding that the board had misconstrued the issue. Citing *Delaney v. Alaska Airlines*, 693 P.2d 859 (Alaska 1985), Judge Blair held that Hester might be entitled to occupational disability benefits even if his job did not cause his Crohn's disease. According to Judge Blair, the *Delaney* decision entitles a claimant to occupational disability benefits if his or her job causes a preexisting condition to advance from a dormant state to an acute state. Judge Blair remanded the case to PERB because it failed to address this issue.

PERB heard additional testimony and arguments relating to the remand. Hester provided telephonic testimony from Dr. Michael Citron, a gastroenterologist in California who had evaluated Hester in 1980 and 1985. PERB also heard from Dr. Vernon Cates, a member of DRB which had previously advised PERB.[4] On May 14, 1987, PERB again denied occupational disability benefits to Hester.

Hester again appealed PERB's decision to the superior court. Judge Michael L. Wolverton affirmed PERB's denial of benefits. Hester appeals.

## II. DISCUSSION

Since the superior court acted as an intermediate court of appeal, we independently and directly scrutinize the merits of PERB's decision. *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987). In reviewing PERB's denial of occupational disability

---

1. AS 39.35.680(26) defines "occupational disability" as follows:

    "occupational disability" means a physical or mental condition that, in the judgment of the administrator, presumably permanently prevents an employee from satisfactorily performing the employee's usual duties for an employer or the duties of another comparable position or job that an employer makes available and for which the employee is qualified by training or education; however, the proximate cause of the condition must be a bodily injury sustained, or a hazard undergone, while in the performance and within the scope of the employee's duties and not the proximate result of the wilful negligence of the employee.

2. Hester was, however, entitled to receive non-occupational disability benefits pursuant to AS 39.35.400.

3. The legislature disbanded the DRB in 1990. Ch. 40, § 4, SLA 1990. Currently, the governor appoints medical experts to serve as voting members on PERB when it needs such expertise. AS 39.35.030(d).

4. DRB did not reevaluate Hester's application after the remand. DRB had concluded in its initial recommendation that work-related stress does not cause Crohn's disease *nor exacerbate its symptoms*.

benefits to Hester, we must first determine whether the board applied the correct legal standards. Second, we must consider whether substantial evidence supports the board's factual findings.

### A. Is the Worsening of a Claimant's Nonwork-related Disease Compensable as an Occupational Disability Under Alaska's Public Employees' Retirement System?

■ The state argues that PERB applied an appropriate standard in its initial decision, No. 85-7, when it considered simply whether Hester's work proximately caused his Crohn's disease.[5] According to the state, *Delaney*, 693 P.2d 859, is inapplicable to PERB because *Delaney* is a workers' compensation case.

In support of its argument, the state emphasizes the following: (1) the broad presumption of coverage under workers' compensation does not apply under PERS; and (2) unlike the workers' compensation statutes, PERS provides for benefits for nonoccupational disability as well as for occupational disability. Therefore, according to the state, the court should apply a narrow interpretation to the words "a bodily injury sustained, or a hazard undergone, while in the performance and within the scope of the employee's duties," when evaluating the PERB's denial of occupational disability benefits. The state argues that this language in AS 39.35.680(26) does not entitle an employee whose preexisting condition is aggravated by his or her work to occupational disability benefits. We disagree.

In *Delaney* we stated that "a preexisting disease does not rule out compensation [under the Alaska Workers' Compensation Act] if employment aggravated, acceler-

ated or combined with the disease to produce disability." 693 P.2d at 862 (citing *Thornton v. Alaska Workers' Compensation Board*, 411 P.2d 209, 210 (Alaska 1966)). We held that an employee is entitled to workers' compensation benefits if the employee's work was a substantial factor in bringing about the disability.[6] *Id.*

We believe that the causation standards articulated in *Delaney* are applicable to occupational disability claims under the PERS as well as to workers' compensation claims. It is basic that an accident which produces injury by precipitating the development of a latent condition or by aggravating a preexisting condition is a cause of that injury. 22 Am.Jur.2d *Damages* § 280 (1988); *see also LaMoureaux v. Totem Ocean Trailer Express, Inc.*, 632 P.2d 539 (Alaska 1981) (upholding jury instruction that plaintiff was "entitled to recover damages for an aggravation of such preexisting condition or disability proximately resulting from the injury," while rejecting plaintiff's proposed instruction making defendant liable for plaintiff's entire injury if plaintiff was unable to make an apportionment between his preexisting injury and that suffered in the accident), *reh'g on other grounds*, 651 P.2d 839 (Alaska 1982).

Other jurisdictions have held that occupational disability can occur from work-related aggravation of a preexisting condition. The Court of Appeals of New York held that a city sanitation worker is entitled to accident disability retirement following an explosion at work if the explosion precipitated the employee's chronic anxiety neurosis. *Tobin v. Steisel*, 64 N.Y.2d 254, 485 N.Y.S.2d 730, 475 N.E.2d 101 (1985); *see also Tingler v. City of Tampa*, 400 So.2d 146, 149–50 (Fla.Dist.Ct.App.1981) ("When the disability is 'revealed' by the stress of

---

**5.** The state did not appeal the superior court's remand of PERB's initial decision nor petition the supreme court for review. Nevertheless, we must consider the merits of Judge Blair's decision at this point. *See City & Borough of Juneau v. Thibodeau*, 595 P.2d 626 (Alaska 1979) (The decision of a superior court acting as an intermediate appellate court, which reverses the judgment of an inferior court or the decision of an administrative agency and remands for fur-

ther proceedings, is not a final judgment for purposes of appeal.).

**6.** Like Hester, Delaney suffered from Crohn's disease. We affirmed the Alaska Workers' Compensation Board's denial of Delaney's claim for benefits on the grounds that substantial evidence supported the board's finding that Delaney's Crohn's disease was not aggravated by his employment as an Alaska Airlines pilot. *Delaney*, 693 P.2d at 865.

appellant's job, notwithstanding the pre-existing condition, we hold that it was received 'in the service' and entitles appellant to [occupational] disability benefits."); *Olson v. City of Wheaton Police Pension Board*, 153 Ill.App.3d 595, 106 Ill.Dec. 596, 598, 505 N.E.2d 1387, 1389 (1987) (in reviewing policeman's claim for occupational disability resulting from migraine headaches allegedly precipitated by job-related stress, intermediate appellate court applied aggravation of preexisting condition rule articulated by Illinois Supreme Court in workers' compensation cases); *Henning v. Carrier*, 430 So.2d 1310, 1317 (La.Ct.App. 1983) (aggravation of preexisting heart condition falls into category of an "injury received in the line of duty" under former Louisiana Statute § 33.2376(B)(1)); *Gibson v. Texas Mun. Retirement Sys.*, 683 S.W.2d 882, 884 (Tex.Ct.App.1985) ("If, indeed, the strain [of repairing firehouse door] aggravated the pre-existing heart condition then Gibson is entitled to receive the supplemental [*i.e.* occupational] disability benefit."). Like AS 39.35.680(26), none of these states' disability statutes explicitly address preexisting conditions. We agree with the rationale of *Tobin*, 485 N.Y.S.2d 730, 475 N.E.2d 101, and perceive no reason to alter basic principles of causation when dealing with retirement benefit cases.

The state's contention that the statutory presumption of coverage under the Alaska Workers' Compensation Act is not applicable to claims under PERS is correct. Recently we held that in occupational disability claims, unlike workers' compensation claims, "the employee bears the burden of establishing by a preponderance of the evidence that the disability was proximately caused by an injury which occurred in the course of employment." *State, Public Employees' Retirement Board v. Cacioppo*, 813 P.2d 679, 682–83 (Alaska, 1991).

Who bears the burden of proof, however, has no relevance to what that party must prove. In *Cacioppo*, we stated that an occupational injury need not be the sole factor, but rather a substantial factor, in causing the employee's disability. *Id.* at 683. This holding is consistent with *Delaney*, 693 P.2d at 862. Hester is entitled to occupational disability benefits if he can establish by a preponderance of the evidence that work-related stress was a substantial factor in aggravating his Crohn's disease to the extent that he was no longer capable of working.

**B. Is the Public Employees' Retirement Board's Conclusion that Hester's Work as Police Chief did not Exacerbate His Crohn's Disease Supported by Substantial Evidence?**

Both parties agree that the appropriate standard of review is whether the PERB's finding is supported by substantial evidence. We have defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support [the board's] conclusion." *Miller v. ITT Arctic Services*, 577 P.2d 1044, 1049 (Alaska 1978).

PERB concluded that Hester's work conditions did not cause his Crohn's disease to advance from a dormant to an acute state.[7] According to PERB, the evidence presented to it indicated that "the very nature of the disease was such that in its natural course it recurs with episodes of flare-up not necessarily or even probably attributable to stress."

We believe that substantial evidence supports the board's conclusion. The following evidence supports PERB's conclusion that there was no proven causal link between Hester's work as police chief and the disabling effects of his Crohn's disease: (1)

7. In interpreting AS 39.35.680(26), we reject the distinction articulated in *Weller v. Union Carbide Corp.*, 288 Or. 27, 602 P.2d 259 (1979), between worsening of the underlying disease process and worsening of the symptoms of a disease. The Supreme Court of Oregon held that the former is compensable, but that the latter is not. *Id.*, 602 P.2d at 261–62. As the Oregon court recognized, *Id.*, 602 P.2d at 261 n. 2 & 262, it is difficult to separate an aggravation of "symptoms" from aggravation of a "disease." *Delaney* simply requires that "the employment must have been a substantial factor in bringing about the *disability*." 693 P.2d at 862 (emphasis added). We believe that increased pain or other symptoms can be as disabling as deterioration of the underlying disease itself.

Dr. Vernon A. Cates' testimony that stress is not a major factor in the pathology of Crohn's disease and that the major cause of flareups is the natural continuing process of the disease itself; (2) the expert opinion of the DRB that there is no persuasive evidence that job-related stress causes Crohn's disease or exacerbates its symptoms; (3) the opinion of Dr. Willard E. Andrews, the consulting physician who reviewed the available medical evidence for the administrator, that the stress of police work is not a causal link to Hester's condition; and (4) Dr. Michael Citron's acknowledgment that Crohn's disease flare-ups can recur for reasons other than stress.

Hester argues that PERB inappropriately discredited the testimony of Dr. Doolittle, Hester's treating physician and a specialist in Crohn's disease. In addition, Hester contends that PERB gave inordinate weight to the testimony of Dr. Cates, considering his bias as a member of the DRB, his lack of personal medical knowledge of Hester and his lack of special expertise relating to Crohn's disease. While we recognize the merit in Hester's criticism of PERB's decision, we do not believe that such weaknesses in the evidence justify reversing the board's decision. Weighing the evidence is the role of the board, not this court. *Delaney,* 693 P.2d at 863 & n. 2.

AFFIRMED.

RABINOWITZ, Chief Justice, dissenting.

I dissent from the court's holding that there is substantial evidence to support the decision of PERB that "Hester's work con-

ditions did not cause his Crohn's disease to advance from a dormant to an acute state" and that "the very nature of [Crohn's] disease was such that in its natural course it recurs with episodes of flare-up not necessarily or even probably attributable to stress."[8] At 476–477.

In the case at bar the majority affirms the denial by PERB of benefits to Hester on the basis of (1) the testimony of Dr. Cates; (2) the opinion of the DRB; (3) the testimony of Dr. Andrews; and (4) Dr. Citron's acknowledgement that Crohn's disease flare-ups can recur for reasons other than stress. *Id.* at 476.

Based on my review of the record, I conclude that the denial by PERB of benefits is not supported by substantial evidence. First, Dr. Cates' testimony is less reliable than the testimony this court disregarded in *Black v. Universal Servs., Inc.,* 627 P.2d 1073, 1076 (Alaska 1981).[9] Dr. Cates is a general practitioner, who over the last 10 years hadn't treated, or operated on anyone with Crohn's disease. Furthermore, he never saw, treated, or examined Hester until the proceedings before the PERB were commenced. Dr. Cates acknowledged his lack of specialized expertise in the treatment of Crohn's disease and his limited knowledge of the medical literature in the field. He admitted that stress plays some role in flare-ups. Finally, I think it significant to note that Dr. Cates' testimony is contrary to the testimony of all of Hester's treating physicians, who expressed the opinion that stress exacerbated Hester's Crohn's disease.

Second, I don't believe that significant weight should be attached to the decision

8. In determining whether there is substantial evidence, a court "must take into account whatever in the record fairly detracts from its weight." *Delaney v. Alaska Airlines,* 693 P.2d 859, 863–64 n. 2 (Alaska 1985) *overruled on other grounds* 741 P.2d 634, 639 (Alaska 1987) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1950)).

9. In *Black v. Universal Servs., Inc.,* this court reversed the denial of continuing compensation by the Workers Compensation Board despite the testimony of a doctor supporting the Board's ruling. 627 P.2d 1073 (Alaska 1981). We reasoned that "Dr. Pennell [the doctor relied upon

by the Board] had no opportunity to examine Black in any depth, and because his conclusions are contrary to those of the numerous physicians who treated her, we have concluded that a 'reasonable mind' would not accept his diagnosis." *Id.* at 1075–76 (footnote omitted). Dr. Pennell's examination of Black lasted only twenty minutes. *Id.* at 1075 n. 9. Thus, in *Black* we concluded that "Dr. Pennell's knowledge of the case is so slight as to make his report worthless. After reviewing the record, we are unable to accept Dr. Pennell's report as 'substantial evidence' in support of the Board's conclusion...." *Id.* at 1075.

of the DRB. Dr. Cates was both a witness and the only member of the DRB who is a physician.

Third, the majority cites Dr. Andrews' testimony for the proposition that "the stress of police work is not a causal link to Hester's condition." On the other hand, the record discloses that Dr. Andrews stated that stress exacerbated the disease.

> The role of stress is controversial to this condition, but *I believe that stress undoubtedly exacerbates its progression. Relief of the stressful situation makes management of the condition much more successful.* I do not feel the stress of police work [sic] is a causal link to this condition.

(Emphasis added). Dr. Andrews' finding that reducing Hester's stress makes his condition more manageable indicates that work related stress exacerbated the disease.

Finally, the PERB relied on Dr. Citron's acknowledgement that Crohn's disease flare-ups can recur for reasons other than stress. It should be noted that Dr. Citron, a gastroenterologist, who has treated 800 to 1000 cases of Crohn's disease, stated in part:

> I don't think there is a gastroenterologist that would not admit that there is an association between aggravation of the disease and stress situations.... I don't think there is ... much doubt ... that there is a relationship between stress and exacerbation of the disease.

In brief, based on the testimony of Dr. Jones,[10] Dr. Stevenson,[11] Dr. Doolittle,[12] and the testimony mentioned above, I conclude that the decision of the PERB denying Hester benefits lacks substantial evidence.

---

**10.** In his physician's statement, Dr. Jones states that Hester's condition was "aggravated by emotional stress."

**11.** In his physician's statement, Dr. Stevenson writes in part that Hester's disease was "exacerbated by stress."

**12.** Throughout his extensive testimony before the PERB, Dr. Doolittle, Hester's primary treating physician, related exacerbation of Hester's Crohn's disease to work connected stress.