OPINION
WINFREE, Justice.
I. INTRODUCTION
A state employee applied for occupational disability benefits, claiming that prolonged sitting at work aggravated a preexisting medical condition. The Division of Retirement and Benefits denied the claim. An administrative law judge affirmed that decision, determining that employment was not a substantial factor in causing the employee’s dis *527 ability. On appeal the superior court reversed the administrative law judge’s decision. Because the administrative law judge’s decision was supported by substantial evidence, we reverse the superior court’s decision and thereby affirm the administrative law judge’s decision.
II. FACTS AND PROCEEDINGS
A. Underlying Facts And Prior Proceedings
This case comes to us for a third time.[1] The underlying facts and proceedings relevant to this appeal are fully set forth in Shea II.[2]
In brief, Shirley Shea suffers from chronic pain and has been unable to work since 2001.[3] Shea was granted non-occupational disability benefits in March 2003,[4] but was denied occupational disability benefits because the Division of Retirement and Benefits’ retained expert, Dr. William Cole, concluded after reviewing Shea’s medical record that “[tjhere is not evidence from the record that the pain was caused by her occupation.” [5] In response Shea underwent a series of medical exams between August 2003 and August 2005 seeking to determine the connection, if any, between prolonged sitting at her employment and her chronic pain.[6] The Division found the new information unconvincing:
In August 2005, at the Division[’s] request, Dr. William Cole reviewed all the information in Shea’s medical record, including the opinions and medical reports Shea had obtained since Dr. Cole’s opinion in March 2003. After considering this information, Dr. Cole maintained his opinion that “there is not a substantial presentation of an argument to support [Shea’s] claim that her job activities were [a] significant contributing factor to this condition, no more than the rest of the activities of daily living of her life were.” As a result, the Division affirmed its denial of Shea’s claim for occupational disability benefits.[7]
Shea appealed this decision to the Office of Administrative hearings, and a hearing was held in March 2006.[8] Both Dr. Michael Smith, whom Shea had seen in 2004 for an opinion on causation,[9] and Dr. Joella Beard, whom Shea had seen in 2001 for a disability impairment rating,[10] testified at the hearing.[11]
The Administrative Law Judge (ALJ) found by a preponderance of the evidence that Shea “suffered some form of injury to her ilioinguinal nerve in the course of the 1984 procedure, resulting in long-term unresolved ilioinguinal neuralgia.” But he defined her “disabling condition [as] chronic pain syndrome, primarily resulting from the nerve injury in 1984, and referred and secondary pain related to that injury.” He also found that the initial trauma from 1984 left Shea “with a vulnerable nerve, which intermittently flared up ... as a result of the activities of everyday life, leading eventually to secondary bursitis and referred pain in a variety of areas.” He noted that Shea’s bursitis, however, “is not disabling, and the chronic pain she suffers has many sources other than her working conditions.... Her claim for disability benefits rests on whether, in light of the record as a whole, her employment was a substantial factor in a complex chronic pain syndrome.”
The ALJ found that Shea “did not prove by a preponderance of the evidence that her employment was a substantial factor in her disability” and affirmed the Division’s denial *528 of Shea’s occupational disability claim;[12] Shea appealed to the superioi* court, and it affirmed the ALJ’s decision.[13] Shea appealed to this court, and we reversed the superior court’s decision upholding the ALJ’s decision and remanded for proceedings consistent with our explanation of the appropriate causation standard.[14] ■
B. The ALJ’s Decision On Remand
The ALJ issued his decision on remand in February 2013. No new evidence was considered, but the ALJ did consider the parties’ briefs and our Shea II decision, which authorized the ALJ to “reevaluate the evidence ... as he deemfed] necessary,”[15] The sole issue again was whether Shea’s employment was a substantial factor in causing her disabling pain.
The ALJ examined evidence indicating that prolonged sitting at work was a substantial factor in causing Shea’s disabling pain. Among this evidence was; “(1) Dr. Smith’s opinion [at the hearing] that-prolonged sitting aggravated a physical condition and her pain symptoms, ... (2) sitting was painful to her, (3) her job duties involved long periods of sitting, and (4) during the time she worked for the State of Alaska, her pain symptoms increased.”
The ALJ also considered evidence indicating that Shea’s employment was not a substantial factor in her disability:
(1) Ms. Shea on multiple occasions prior to becoming disabled reported that her pain was caused by a wide variety of common, every-day activities, including walking, and physical activity in general; (2) .Ms. Shea did not identify sitting as a causal factor until February, 1999, after her symptoms had become highly problematic; (3) Ms. Shea in 1998, and again in 1999, reported no significant or particular aggravating or alleviating factors; (4) Ms. Shea did not herself identify working conditions as. a causal factor until 2003, long after she had ceased working; (5) Dr. Beard’s expert medical opinion that prolonged sitting did not permanently aggravate the underlying physical condition; and (6) Dr. Beard’s observation that Ms. Shea’s pain symptoms could have been a result, in some degree, of psychological factors.
The ALJ determined that Shea had proved prolonged periods of sitting at work were a but-for cause of her disability. But the ALJ concluded that reasonable persons would not attach responsibility to the State for Shea’s disability because her employment conditions were not a sufficiently “significant and important a cause” of her disability; the ALJ therefore found Shea had not proved that prolonged sitting at work was a substantial factor in causing her disability. Shea then appealed the ALJ’s decision, to the superior court.
C. Appeal To The Superior Court
The superior court issued its decision in December 2014, reversing the ALJ’s decision after determining that it was not supported by substantial evidence, The superior court determined that “the factual findings upon which the ALJ based his conclusion that reasonable persons would not attach responsibility to Shea’s employer for her injury were not adequate to support his conclusion,” This determination was driven in part by the notion that “ft]he ALJ cannot find on one hand that Dr. Smith’s testimony was substantial evidence establishing actual cause but not substantial evidence supporting the causal component of proximate cause.”
The State appeals the superior court’s decision.
III. STANDARD OF REVIEW
When the superior court acts as an intermediate court of appeal in an adminis *529 trative matter, we independently review the merits of the agency’s decision.[16] We review a board’s factual findings “to determine whether they are supported by substantial evidence,” which is “such relevant evidence as a reasonable mind might accept as adequate to support the board’s conclusion.”[17] “[W]e view the evidence in favor of the findings,” [18] and we will not choose between competing inferences or evaluate the strength of the evidence.[19] We will look only to determine if substantial evidence exists in the record, taking into account evidence in the record detracting from the supporting evidence’s weight.[20] “The conclusion that a work-related injury or hazard is not a substantial factor in causing an employee’s disability must be supported by substantial evidence. It is a legal question whether the quantum of evidence is substantial enough to support such a conclusion in the contemplation of a reasonable mind.”[21]
IV. DISCUSSION
To qualify for occupational disability benefits, Shea had the burden of proving[22] that her employment was “terminated because of a total and apparently permanent occupational disability.”[23] An “occupational disability” is
a physical or mental condition that, in the judgment of the administrator, presumably permanently prevents an employee from satisfactorily performing the employee’s usual duties for an employer or the duties of another comparable position or job that an employer makes available and for which the employee is qualified by training or education; however, the proximate cause of the condition must be a bodily injury sustained, or a hazard undergone, while in the performance and within the scope of the employee’s duties and not the proximate result of the wilful negligence of the employee.[24]
The presumption of compensability from the workers’ compensation context does not apply in the occupational disability benefits context, and the employee must prove by a “preponderance of the evidence that the disability was proximately caused by an injury which occurred in the course of employment.”[25] An employee’s underlying injury does not need to have been caused by the employment; instead, an employee can qualify for occupational disability benefits by showing that the employment aggravated a preexisting condition by causing increased pain or other symptoms.[26] This aggravation must be shown to be a substantial factor in contributing to the employee’s disability.[27]
The ALJ concluded that Shea had established sitting contributed to her disabling pain, but that she did not prove her employment was a substantial factor in causing her disability. This conclusion rested on the ALJ’s determination that “some reasonable persons would consider prolonged sitting at work so significant and important a cause as to attach legal responsibility for it and others would not” and that “the latter group is larger.” Five reasons supported this eonclu *530 sion: (1) Dr, Beard’s testimony that Shea’s ilioinguinal neuralgia[28] had resolved weakened Dr. Smith’s opinion that prolonged sitting at work was a substantial factor of Shea’s disability; (2) Shea did not report prolonged sitting at work as a pain trigger to any of her physicians prior to her disability claim’s denial; (3) ordinary daily activity aggravated Shea’s pain; (4) Dr. Smith’s testimony limited the aggravation of Shea’s chronic pain symptoms from prolonged sitting at 5% to 10%; and (5) expert testimony indicated psychological factors may have contributed to Shea’s chronic pain.
A. The Factual Findings Underpinning The ALJ’s Proximate Cause Decision Are Supported By Substantial Evidence.
Shea challenges the factual findings underpinning the ALJ’s proximate cause decision as unsupported by substantial evidence. On appeal we do not reweigh the evidence or choose between competing inferences, but we will look to the record’s entirety to ensure that substantial evidence supports the ALJ’s factual findings.[29]
1. Dispute between Dr. Beard’s testimony and Dr. Smith’s testimony
Dr. Beard explained that in her experience the nerve damage caused by Shea’s 1984 procedure would likely not continue for as long as Shea’s pain had continued. Dr. Beard also noted that ilioinguinal neuralgia is a condition aggravated by heavy lifting, extreme positioning, and sometimes standing or walking for long periods of time. When questioned about prolonged sitting’s effect on il-ioinguinal neuralgia, Dr. Beard stated that it would not “cause a permanent worsening or flare of [the] condition” if the person had the ability to adjust her position. This testimony directly contradicted Dr. Smith’s testimony that prolonged sitting would affect Shea’s condition, which was based on the belief that her ilioinguinal neuralgia had not resolved and remained the primary problem.
The dissent asserts that the ALJ erroneously concluded that Shea’s neuralgia had resolved. But the ALJ made no such finding. The ALJ found there was dispute between the doctors concerning the underlying cause of Shea’s disability and whether her ilioingui-nal neuralgia had resolved, and that this dispute weakened Shea’s case. Portions of Dr. Beard’s testimony provide substantial evidence for the ALJ’s finding that the ilioin-guinal neuralgia diagnosis was disputed: “I do not believe she had chronic pelvic pain,” and “even back then, no, I would not have diagnosed her or given her that label of ‘chronic pelvic pain.’ ”
The dissent endorses the superior court’s assertion that Dr. Beard’s testimony “does not necessarily show that Shea’s injury had abated; it shows either that (1) Shea’s condition was atypical, or (2) something else was causing her pain. Neither is proof that her ilioinguinal neuralgia resolved.” But that formulation shows that there were two competing factual inferences the ALJ could have drawn from Dr. Beard’s testimony, with evidence supporting either. Although the ALJ did not state he was drawing the latter inference — again, this was the superior court’s formulation — he did find that Dr. Beard’s testimony raised a dispute concerning the etiology of Shea’s current symptoms and that her pain could be caused by something other than ilioinguinal neuralgia substantially aggravated by work requirements.[30]
The dissent waves away this evident dispute by asserting that “the factual issue regarding the etiology of Shea’s pain was either uncontested or had been resolved in Shea’s favor,” and maintaining that the possibility of any medical dispute “is flatly contra- *531 dieted by the ALJ’s earlier finding ... that Shea’s 1984 procedure ‘resultfed] in long-term unresolved ilioinguinal neuralgia.’ ” But on remand we authorized the ALJ to “reevaluate the evidence ... as he deemfed] necessary,” [31] and he was entitled to rely more heavily this time around on Dr. Beard’s testimony to discount the persuasiveness of Dr. Smith’s opinion concerning the role work requirements played in the progression of Shea’s disability.
And the ALJ’s findings prior to remand concerning the cause of Shea’s disability are not as clear as the dissent now asserts. The preponderance of evidence may have indicated that Shea had long-term unresolved ilioin-guinal neuralgia, but Shea’s disabling condition was found to be “chronic pain syndrome, primarily resulting from the nerve injury in 1984, and referred and secondary pain related to that injury.” The causes of that referred and secondary pain are and always have been in dispute: the ALJ found prior to remand that “the chronic pain she suffers has many sources other than her working conditions”; and in its brief on appeal the State argues that evidence of how other “ordinary daily life activities also aggravated Shea’s pain is relevant and material evidence of alternative causation.”
The dissent correctly notes that the “material, contested question” in this case is “whether sitting at work was so important a cause in Shea’s pain that reasonable persons would regard it as a cause and attach responsibility to it.” That being the inquiry, it is not clear how the possibility of an alternative cause of Shea’s pain was “not legally relevant” after remand — when Shea bore the burden of demonstrating the relationship between work requirements and her “complex chronic pain syndrome” — particularly when Shea’s own expert witness attributed no more than 10% of her symptoms to those work requirements.
Substantial evidence supported the ALJ’s interpretation of Dr. Beard’s testimony. And as the superior court noted, “fi]n other areas of law, the Alaska Supreme Court has held that where there are two or more conflicting medical opinions — each of which constitutes substantial evidence — the reviewing court will affirm the decision of the agency below.” [32] This principle supports upholding the ALJ’s finding that Dr. Beard’s testimony weakened Dr. Smith’s opinion that prolonged sitting at work was a substantial factor in Shea’s disability.
2. Shea’s prior failure to report to a physician that sitting at work increased her pain
The ALJ determined that prior to Shea’s disability claim denial she did not report prolonged sitting at work as a pain trigger to any physician. Shea did not report until 1999 that sitting in general increased her pain. And she did not report until 2003 thát prolonged sitting at work increased her pain, after she filed her occupational disability claim. Substantial evidence in the record supports the ALJ’s finding.
Shea asserts that the ALJ impermissibly disregarded testimony that prior to 1999 she had reported to her employer that sitting aggravated her pain. The ALJ’s fact finding on this issue relates only to when Shea first reported the link to a physician. Though Shea is correct that the record contains evidence she reported pain from sitting to her employer, this evidence does not controvert the ALJ’s physician-specific finding.
3. Ordinary activities and Shea’s pain
The record supports the finding that ordinary daily activities aggravated Shea’s pain. Between 1989 and 2001 Shea told various physicians that her pain was aggravated by a range of routine daily activities including working in her yard, any physical activity, using stairs, sitting, standing, walking, bending forward or backward, and lifting. Shea’s husband testified that Shea ceased doing routine activities like cooking, gardening, and walking her dog because those activities increased her pain.
4. Dr. Smith’s testimony on the upper bound of prolonged sitting as a source of Shea’s pain
Dr. Smith stated that prolonged sitting increased Shea’s pain by “maybe 5 or 10 *532 percent, at the most.” There is no dispute about this testimony.
5. Dr. Beard’s testimony regarding psychological factors
Dr. Beard’s testimony clearly supports the ALJ’s observation that psychological factors may have contributed to Shea’s disabling pain. Dr. Beard testified: “I don’t believe she was disabled as much as she felt she was disabled. Her perception of her disability ... exceeded ... what would be ... mostly medically reasonable”; in situations like Shea’s the pain’s original source can resolve and the pain “itself becomes their driving force. And it’s a big emotional, psychological, psychosocial dilemma as to what is really driving this pain. So in her case, I would say ... it was her perception that she was not able to return to work, not necessarily ... that that was accurate.” Dr. Beard noted that without further psychological evaluation she could not definitively say whether Shea’s pain had a psychological, rather than physical, cause, but that based on the evidence at hand she saw no grounds to rule it out.
The ALJ did not find that psychological factors did cause Shea’s disability. He rioted only that they may have done so. Substantial evidence supports this observation.
B. The ALJ’s Ultimate Factual Determination That Prolonged Sitting At Work Was Not The Proximate Cause Of Shea’s Disability Is Supported By Substantial Evidence.
The causation question disputed here is whether Shea’s employment was a proximate cause of her disability. A proximate cause is a cause that is “so important in bringing about the injury that reasonable [persons] would regard it as a cause and attach responsibility to it.”[33] The appropriate inquiry is “whether the conduct has been so significant and important a cause that the defendant should be legally responsible.”[34] The ALJ determined that Shea’s employment was not so significant and important a cause that the State should be legally responsible.
Because reasonable minds could disagree whether Shea’s employment was a substantial factor in causing her disability, we review the ALJ’s determination for substantial evidence.[35] We give deference to an ALJ’s decision if it is supported by evidence “substantial enough to support [the] conclusion in the contemplation of a reasonable mind.”[36]
Dr. Beard’s testimony supports the ALJ’s conclusion. It casts doubt on whether Shea suffered from ilioinguinal neuralgia during her State employment, breaking the causal chain between Shea’s prolonged sitting and the aggravation of a preexisting condition. The dissent suggests that Dr. Beard’s testimony should be discounted because Dr. Beard applied an incorrect legal standard when offering her opinion on whether Shea’s disability was work related.[37] But as the ALJ noted, Dr. Beard’s mistake about the appropriate legal standard was relevant only to her “opinion as to causation.” The dissent offers no reason Dr. Beard's diagnosis of Shea’s condition and potential aggravating factors should likewise be dis *533 counted or why it should not cast doubt on the premise of Dr. Smith’s opinion, which was that “ilioinguinal neuralgia is the primary problem.’’
Dr. Beard’s testimony substantially undercuts Dr. Smith’s, and, even if it did not, Dr. Smith’s opinion that Shea’s employment contributed to the increase in her pain by no more than 10% would not necessarily make it a substantial factor “if reasonable persons would [not] regard the injury as a cause of the disability and [not] attach responsibility to it.”[38] Dr. Smith testified it was more likely than not that Shea’s work environment aggravated her condition by 5% to 10%. Dr. Smith himself characterized this percentage as “small.” Even if the ALJ relied exclusively on Dr. Smith’s testimony, he could reasonably conclude that a 5% to 10% increase in Shea’s symptoms resulting from work was not “so significant and important a cause as to attach legal responsibility to her employer for her disability.” ' Our Shea II decision leaves room for such a finding.[39] And although the dissent certainly is correct that Shea II “permits the opposite conclusion as well,” the ALJ is the fact finder here, not this court.
That Dr. Smith’s testimony in itself could have been sufficient to support the ALJ’s proximate cause finding is also relevant to the dissent’s arguments about the ALJ’s allegedly “contradictory findings,” The dissent argues that the ALJ made “contradictory findings” because Dr. Smith’s testimony was sufficient to establish but-for cause yet insufficient to establish proximate cause. We conclude instead that the ALJ correctly required a higher showing to establish that prolonged sitting was a “substantial factor” in Shea’s disability rather than simply “one among a multitude of aggravating factors, no one of which stood out as of particular significance.” [40] “Substantial factor” necessarily requires a higher showing than but-for cause in this context: “but-for cause” requires that Shea’s work was a factor, in causing her disability; “legal cause” demands in addition that the factor be substantial. The ALJ could have relied exclusively on Dr. Smith’s testimony throughout and found without contradiction that it sufficed to establish but-for cause but not proximate cause.[41]
Shea’s failure until 2003 to report to a physician that prolonged sitting at work caused her disabling pain further supports the conclusion that a reasonable person would not attach legal responsibility to her employer. Her failure to report to a physician that work aggravated her pain indicates that her employment was not, in her mind, so significant a cause of her increased pain that she thought it particularly relevant to medical diagnosis and treatment.
The dissent asserts that the ALJ’s finding here provides no persuasive evidence concerning the legal causes of Shea’s disability because “Shea’s reports to her supervisor *534 indicate ‘that she knew [sitting] was a factor in what caused her pain,’” and because “Shea had no need to report her work conditions to her doctor” as her supervisor was working with her to mitigate her pain. This argument misapprehends the finding’s relevance. It is undisputed that Shea’s pain manifested at work. But the relevant inquiry is not whether sitting for prolonged periods aggravated the contemporaneous expression of symptoms. Rather the relevant inquiry is whether prolonged sitting in some way precipitated or worsened the symptoms or the underlying disease process on a “presumably permanent[ ]” basis.[42]
The dissent acknowledges this distinction when it discusses how Dr. Smith “testified that prolonged sitting at work aggravated Shea’s pain in two ways: by increasing it during work, after which the pain would return to baseline, and by increasing her baseline level of pain.” We are concerned only with the latter. Shea discussing prolonged sitting at work with her supervisors is evidence of the former, but it does not address the relevant inquiry.[43]
And although for medical diagnosis and treatment purposes, as the dissent states, “prolonged sitting at work is not reasonably distinguishable from prolonged sitting in general,” in the ALJ’s opinion sitting also is not distinguishable in significance from other activities Shea reported to physicians, including “standing, walking, exercise, bending forward or backwards, cold, and stairs.” Shea failed to identify to physicians that work requirements were a likely contributing factor to her disability but addressed work requirements with her supervisors; these actions support the ALJ’s finding prior to remand that “prolonged sitting was one among a multitude of aggravating factors, no one of which stood out as of particular significance.” And this lack of distinction is relevant to determining whether work requirements should be considered the legal cause of Shea’s disability.
*535 The dissent correctly notes that the ALJ’s observations about psychological factors were “tepid” and based on mere speculation because Shea did not undergo sufficient psychological evaluation. But Dr. Beard’s very firm opinion that “I do not believe [Shea] had chronic pelvic pain” was not mere speculation; Dr. Beard based her opinion on personal examination and experience treating patients with similar conditions. Dr. Beard’s opinion undercut the persuasiveness of Shea’s arguments. And because Shea bore the burden of proof, the State’s “theory of the case” did not have to include an alternative diagnosis as the dissent seems to suggest. Rather, existing plausible alternative bases for Shea’s pain support the ALJ’s determination that she failed to show work requirements were the proximate cause of her disability.
Other daily activities increased Shea’s pain and other factors, some perhaps psychological, may have played a role in her symptoms. This evidence supports a reasonable conclusion that Shea’s employment was not so significant or important a cause as to justify holding the State legally responsible. Because, in the contemplation of a reasonable mind, the evidence relied on is substantial enough to support the ALJ’s conclusion, we affirm the ALJ’s decision.
Y. CONCLUSION
We REVERSE the superior court’s decision reversing the ALJ’s decision, thereby AFFIRMING the ALJ’s decision sustaining the administrator’s denial of Shea’s occupational disability benefits.

. See Shea v. State, Dep’t of Admin., Div. of Ret. & Benefits (Shea II), 267 P.3d 624 (Alaska 2011); Shea v. State, Dep’t of Admin., Div. of Ret. &Benefits, 204 P.3d 1023 (Alaska 2009).

. 267 P.3d at 626-30.

. Id. at 627.

. Id. at 628.

. Id. at 627-28 (alteration in original).

. Id. at 628.

. Id. at 628-29 (last two alterations in original).

. Id. at 629.

. Id. at 628.

. Id. at 627.

. Id. at 629.

. Id.

. Id. at 630.

. Id. at 636 (stating that a factor can contribute to a person’s disability in equal proportion to other activities and still be a substantial factor if "reasonable persons would regard the injury as a cause of the disability and attach responsibility to it” (quoting Doyon Universal Servs. v. Allen, 999 P.2d 764, 770 (Alaska 2000))).

. Id.; see also Smith v. Univ. of Alaska, Fairbanks, 172 P.3d 782, 792 (Alaska 2007) (noting reviewing court can permit agency to "reweigh the evidence on remand”).

. Shea II, 267 P.3d at 630.

. Id. (quoting Lopez v. Adm'r, Pub. Emps.’ Ret. Sys., 20 P.3d 568, 570 (Alaska 2001)).

. Raad v. Alaska State Comm’n for Human Rights, 86 P.3d 899, 903 (Alaska 2004) (citing Alaska State Comm’n for Human Rights v. Yellow Cab, 611 P.2d 487, 490 (Alaska 1980)).

. Shea II, 267 P.3d at 630 (quoting Lopez, 20 P.3d at 570).

. Id.

. Id. (footnote omitted) (first citing Lopez, 20 P.3d at 571; then citing Municipality of Anchorage, Police & Fire Ret. Bd. v. Coffey, 893 P.2d 722, 726 (Alaska 1995)).

. See id. at 631 (stating that employee bears burden of proof).

. AS 39.35.410(a).

. AS 39.35.680(27).

. Shea II, 267 P.3d at 631 (quoting State, Pub. Emps. Ret. Bd. v. Cacioppo, 813 P.2d 679, 682-83 (Alaska 1991)).

. See id. ("[A]n accident which produces injury by precipitating the development of a latent condition or by aggravating a preexisting condition is a cause of that injury.” (quoting Hester v. State, Pub. Emps.’ Ret. Bd., 817 P.2d 472, 475 (Alaska 1991))).

. Id. at 631-34.

. In December 2000 Shea was diagnosed with ilioinguinal neuralgia, possibly related to nerve damage she suffered in 1984. Shea II, 267 P.3d at 626-27.

. Id. at 634.

. Although the dissent argues that "nothing in the ALJ’s discussion even hints at a finding” that the etiology of Shea’s symptoms was disputed, the ALJ explicitly found that Dr. Beard’s "testimony weakens the basis for [Dr. Smith's] opinion, which was that Ms. Shea’s underlying physical condition ... had not resolved,” that there was "expert medical testimony to the effect that her underlying physical condition had resolved,” and that there was "expert medical testimony that psychological factors may have contributed to her disability.”

. Shea II, 267 P.3d at 636.

. See Doyon Universal Servs. v. Allen, 999 P.2d 764, 767-68 (Alaska 2000).

. Shea II, 267 P.3d at 634 (alteration in original) (quoting Vincent by Staton v. Fairbanks Mem’l Hosp., 862 P.2d 847, 851-52 (Alaska 1993)).

. Id. (quoting Vincent, 862 P.2d at 851).

. Winschel v. Brown, 171 P.3d 142, 148 (Alaska 2007) (explaining "determinations of proximate cause usually involve questions of fact” and become "a matter of law only where reasonable minds cannot differ”).

. Municipality of Anchorage, Police &Fire Ret. Bd. v. Coffey, 893 P.2d 722, 726 (Alaska 1995) (quoting Land & Marine Rental Co. v. Rawls, 686 P.2d 1187, 1188-89 (Alaska 1984)) (explaining when quantum of evidence is substantial enough to support administrative decision).

.Dr. Beard defined "aggravation” as a "permanent worsening or flare [up] of the[] condition,” and testified on that basis that Shea’s work requirements had not aggravated her disability. But an occupational disability can be found where work requirements aggravated the symptoms of a disease, even if there is no change to the underlying condition. Hester v. State, Pub. Emps.’ Ret. Bd., 817 P.2d 472, 476 n.7 (Alaska 1991).

. Shea II, 267 P.3d at 636 (citing Doyon, 999 P.2d at 770).

. See id.

. The dissent states that "the ALJ conceded [there] was adequate proof of causation by Shea.” The only element of causation the ALJ "conceded” was “but-for” cause. But the ALJ has now twice determined that same evidence, in light of its own weaknesses and the doubt cast on it by the State’s evidence and expert medical testimony, was insufficiently compelling to establish proximate cause.

. The dissent contends that Dr. Smith's testimony would not support such a finding because "the ALJ did not find Dr. Smith’s opinion persuasive on the point the court suggests.” But in the decision prior to remand the ALJ accorded Dr. Beard's testimony less weight, yet noted that "Dr. Smith’s opinion, while persuasive as an expression of medical opinion, offers only limited support for the claim that Ms. Shea’s working conditions were a substantial factor in her disability.” After remand, although the ALJ concluded that Dr.. Smith’s opinion supported Shea’s theoiy as a general matter, the ALJ explicitly listed as evidence against Shea the precise extent — 5% to 10% — Dr. Smith attributed Shea’s symptoms to prolonged sitting. Given that on appeal we do not reweigh evidence or choose between competing inferences, it would be inappropriate to. reverse the ALJ’s decision when Shea’s own evidence reasonably could be found insufficient to prove her case, See Shea II, 267 P.3d at 634; see also Road v. Alaska State Comm’n for Human Rights, 86 P.3d 899, 903 (Alaska 2004) (“In applying tire substantial evidence test we view the evidence in favor of the findings.” (citing Alaska State Comm’n for Human Rights v. Yellow Cab, 611 P.2d 487, 490 (Alaska 1980))).

. See AS 39.35.680(27) (defining "occupational disability” as "a physical or mental condition that ... presumably permanently" prevents the employee from performing the employee's usual or comparable duties (emphasis added)); Hester, 817 P.2d at 476 n.7 (holding there is no distinction in the occupational disability context between the "worsening of the underlying disease process and worsening of the symptoms”); see also Shea II, 267 P.3d at 631 ("[A]n accident which produces injury by precipitating the development of a latent condition or by aggravating a preexisting condition is a cause of that injury.” (emphasis added) (quoting Hester, 817 P.2d at 475)).
The dissent argues that we are quoting AS 39.35.680(27) out of context and that it is only the "employee’s inability to perform her work” that "must be permanently precluded.” The statute is clear, however, that our inquiry focuses on the "proximate cause of the condition" (or disabling symptoms), not on the proximate cause of the inability to work, if in this context those two causes can be meaningfully distinguished. AS 39.35.680(27) (emphasis added). And AS 39.35.410 further supports our reading, providing that an "employee is eligible for an occupational disability benefit if employment is terminated because of a total and apparently permanent occupational disability." (Emphasis added.)

. The dissent argues that Shea could qualify for occupational disability benefits "not only by showing that sitting at work permanently caused an increase in her baseline pain but also by showing that sitting at work increased her pain to such an extent that she could not perform her work and that this circumstance was permanent,” and asserts that "[rjequiring a permanent worsening of baseline pain is no different from requiring a permanent worsening of an employee’s condition." But this formulation eliminates the causal component of our inquiry and ignores the requirement that "the proximate cause of the condition must be a bodily injury sustained, or a hazard undergone, while in the performance and within the scope of the employee’s duties.” AS 39.35.680(27) (emphasis added).
In Hester we rejected a distinction between the “worsening of the underlying disease process and worsening of the symptoms of a disease." 817 P.2d at 476 n.7. But we did not alter the statute's requirement that the "worsening of the symptoms” be proximately caused by work requirements. Id. Requiring work to be a proximate cause is not a "reformulation of a distinction we rejected” in Hester, as the dissent asserts. We instead maintain the distinction between occupational and nonoccupational disabilities: the former requires that work be the proximate cause of the disability, while the latter does not. Compare AS 39.35.680(27) (defining occupational disability), with AS 39.35.680(24) (defining non-occupational disability). Nonoccupational disability benefits are available to those, like Shea, for whom work is not a proximate cause of the disability. See AS 39.35.680(24); AS 39.35.400.