**ALASKA PUBLIC EMPLOYEES ASSOCIATION, INC., Petitioner,**

v.

**MUNICIPALITY OF ANCHORAGE et al., Respondents.**

**No. 3045.**

Supreme Court of Alaska.

Oct. 19, 1976.

Stephanie J. Cole, of Rice, Hoppner & Hedland, Anchorage, for petitioner.

Richard W. Garnett, III, Municipal Atty., Allan E. Tasche, Asst. Municipal Atty., Anchorage, for respondents.

OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, ERWIN, CONNOR AND BURKE, JJ.

ERWIN, Justice.

This case comes to us on Petition for Review of a superior court order denying a preliminary injunction against the holding of an election to certify a collective bargaining representative for Anchorage municipal employees. Petitioner, the Alaska Public Employees Association (hereinafter APEA), asserts that a recent unfair labor practice committed by the employer, the Municipality of Anchorage, would dilute APEA's strength among municipal employees and thereby interfere with the exercise of municipal employees' free choice at the election.

In September, 1975, the Greater Anchorage Area Borough (hereinafter GAAB) and the City of Anchorage merged to become the Municipality of Anchorage. Prior to this unification, APEA was the certified bargaining representative for GAAB employees. A collective bargaining agreement between APEA and GAAB provided that should unification occur, APEA and GAAB would reopen negotiations to resolve inequities existing between GAAB and City employees in wages, benefits and working conditions.

In January, 1976, during the course of these reopened negotiations, APEA and the Municipality reached an agreement resolving the issues in dispute. APEA prepared a written statement of this agreement, but the Municipality refused to sign the agreement or to submit it to the Municipal Assembly for ratification. In April, 1976, the Municipality adopted an ordinance [1] which attempted to solve part of the employee unification problem in a manner which conflicted with the prior agreement with APEA.

A second municipal ordinance [2] directed that the election at issue herein be held to certify a bargaining representative for the unified bargaining unit of municipal employees. APEA and a local union, the Anchorage Municipal Employees Association, each gathered enough authorization cards to appear on the election ballot.

In July, 1976, the Anchorage Municipal Employee Relations Board determined that the Municipality's refusal to sign the January agreement constituted an unfair labor practice. However, the Board did not order the Municipality to transmit the agreement to the Assembly because it found that the intervening progress in labor relations made timely scheduling of the representation election the most equitable solution. The Board expressly found that the unfair labor practice "has not had and will probably not have a material affect [sic] on the outcome of a representational election." [3]

The right of public employees in Alaska to bargain collectively was created by the Public Employment Relations Act. [4] The act allows political subdivisions of the state to reject the act's provisions for conduct of labor relations and to substitute their own provisions. [5] We have granted the Petition for Review in this case in order to settle an important issue concerning the procedural safeguards which such local labor ordinances must afford.

The National Labor Relations Board is charged with certifying bargaining representatives for those employees covered under the National Labor Relations Act. [6] The NLRB is also charged with determining the existence of and remedying unfair labor practices committed by employers and unions covered by that Act. [7] We consider the experiences of the NLRB in conducting representation elections and in remedying unfair labor practices to be highly relevant to the performance of those functions by locally created labor boards such as the Anchorage Municipal Employee Relations Board. [8]

The NLRB applies a strict standard to employer or union conduct which might affect the outcome of a representation election.

> Conduct that creates an atmosphere which renders improbable a free choice will sometimes warrant invalidating an election, even though that conduct may not constitute an unfair labor practice . . . In election proceedings, it is the Board's function to provide a laboratory in which an experiment may be conducted, under conditions as nearly ideal

---

1. Anchorage Municipal Ordinance No. AO 71–76.

2. Anchorage Municipal Ordinance No. AO 88–76.

3. Order of the *Anchorage Municipal Employee Relations Board, Alaska Public Employees Association, Inc. v. Municipality of Anchorage* (July 9, 1976).

4. AS 23.40.070, *et seq.*

5. Section 4 of SLA ch. 113 (1972) provides: This Act is applicable to organized boroughs and political subdivisions of the state, home

rule or otherwise, unless the legislative body of the political subdivision, by ordinance or resolution, rejects having its provisions apply.

6. 29 U.S.C.A. § 151 *et seq.* See especially 29 U.S.C.A. § 152(2) and (3) and 29 U.S.C.A. § 159.

7. 29 U.S.C.A. § 160.

8. The Anchorage Municipal Employee Relations Board was created by Anchorage Municipal Ordinance No. AO 69–75.

as possible, to determine the uninhibited desires of the employees.[9]

The NLRB has held that an employer unfair labor practice interfering with the right of employees to organize

> is, *a fortiori*, conduct which interferes with the exercise of a free and untrammeled choice in an election. This is so because the test of conduct which may interfere with the "laboratory conditions" for an election is considerably more restrictive than the test of conduct which amounts to interference, restraint or coercion which violates [National Labor Relations Act] Section 8(a)(1).[10]

In recognition of the coercive effect unfair labor practices may have on representation elections, the NLRB has adopted its "blocking charge" procedure to minimize the number of elections which must be set aside because of the taint of coercive unfair practices. It is the policy of the NLRB to postpone representation elections when it determines that a meritorious unfair labor practice complaint has been filed.[11]

The NLRB blocking charge rule is not an absolute one, however, The procedure is applied in the exercise of the Board's discretion in carrying out its duty to conduct representation elections. The procedure is not to be used where an immediate election would better effectuate the purposes of the National Labor Relations Act. The determination of which course best ef-

fectuates the purposes of the Act rests with the Board.[12]

The NLRB policy blocks the representation election from the time the unfair practice charge is filed until the time of final disposition of the charge by Board order. If after investigation the charge is dismissed, the election may proceed immediately. If the Board finds that the employer or the union has committed an unfair labor practice, the representation election is usually blocked until the time when the employer or the union has fully complied with the Board's remedial order.[13] However, as noted above, the blocking charge procedure is not required by the National Labor Relations Act or by NLRB rules; an exception to the procedure is made whenever the NLRB determines that an immediate election will better effectuate the policies of the Act.[14]

Petitioner APEA argues that the foregoing NLRB practice dictates that holding a representation election at this time would be inappropriate because of the coercive effect of the unfair practice on employee free choice. APEA fails to note that the Employee Relations Board could in its discretion determine that an immediate election would best effectuate the policies of the ordinance.[15] The Board appears to have made such a determination.

The Anchorage Municipal Employee Relations Board has ruled in this case that the unfair labor practice committed by the municipality probably would not affect the outcome of the representation election.

9. *General Shoe Corp.*, 77 NLRB 124, 21 LRRM 1337, 1340–41 (1948).

10. *Dal-Tex Optical Co.*, 137 NLRB 1782, 50 LRRM 1489, 1492 (1962).

11. *Surprenant Mfg. Co. v. Alpert*, 318 F.2d 396, 397 (1st Cir. 1963).

12. *American Metal Products*, 139 NLRB 601, 51 LRRM 1338 (1962).

13. 18 ALR Fed. 420, 443, citing NLRB Field Manual (rev. ed. June, 1971), § 11730, which provides in pertinent part:
> The Agency has a general policy of not proceeding in any representation case . . . where charges of unfair labor practices affecting some or all of the same employees are concurrently pending and where the charging party is a party to the [representation] case.
>
> .    .    .    .    .
>
> The pendency of a charge, as used here, includes all stages in the life of a charge up to and including a dismissal, on the one hand ; or, on the other, up to and including a court decree with which there has not been full compliance.

14. *Id.* at 453–454.

15. *American Metal Products*, 139 NLRB 601, 51 LRRM 1338 (1962).

Accordingly, the Board has ordered the election to be held at this time.[16]

Petitioner asserts that at the time of the unfair practice hearing, the Board heard evidence only on the issue of whether there had been an unfair practice committed by the municipality. The Board did not hear any evidence on the effect such a practice might have had on municipal employees' union feelings. Petitioner states that the only evidence before the Board on the issue of effect was a series of affidavits from municipal employees which indicated that the affiants had become dissatisfied with petitioner's ability to effectively bargain on behalf of the affiants as a result of the Municipality's refusal to sign the January agreement. Respondents' Opposition to the Petition for Review does not deny this allegation.

We believe that the NLRB standard for testing conduct which allegedly interferes with free choice in employee representation elections is a wise one. Accordingly, we hold that an unfair labor practice which occurs close to the time of a representation election *a fortiori* interferes with the exercise of free choice in the election. In the face of this presumption of interference, the Board must hear evidence on the issue of the effect of such unfair practices and it must state specifically the basis for any "opinion" it forms that such a practice would not affect the election.

We remand the case to the superior court with directions to remand to the Employee Relations Board to reopen the unfair labor practice hearing on the issue of the effect of the practice on the upcoming election, and we direct the superior court to enter an order staying the election until the Board hearing and findings are completed.[17]

16. See n. 3, *supra.*

17. Justices Rabinowitz and Connor dissent from the grant of review in this case.