*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| PUBLIC SAFETY EMPLOYEES ASSOCIATION, AFSCME LOCAL 803, AFL-CIO, | ) ) ) ) | Supreme Court Nos. S-16501/16510 |

PUBLIC SAFETY EMPLOYEES          )
ASSOCIATION, AFSCME LOCAL        )   Supreme Court Nos. S-16501/16510
803, AFL-CIO,                    )
                                 )   Superior Court No. 4FA-15-02868 CI
            Appellants and       )
            Cross-Appellees,     )   O P I N I O N
                                 )
    v.                           )   No. 7251 – June 15, 2018
                                 )
CITY OF FAIRBANKS,               )
                                 )
            Appellee and         )
            Cross-Appellant,     )
                                 )
    and                          )
                                 )
ALASKA LABOR RELATIONS           )
AGENCY,                          )
                                 )
            Appellee.            )
                                 )

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael P. McConahy, Judge.

Appearances: Molly C. Brown and Margaret Simonian, Dillon & Findley, P.C., Anchorage, for Appellants and Cross-Appellees. Paul J. Ewers, City Attorney, Fairbanks, for Appellee and Cross-Appellant. Notice of nonparticipation filed by Kimberly D. Rodgers, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger,
and Carney, Justices.

WINFREE, Justice.
BOLGER, Justice, with whom MAASSEN, Justice, joins, dissenting.

## I.    INTRODUCTION

This appeal requires us to decide whether a city council's reconsideration and ultimate rejection of a labor agreement constituted an unfair labor practice under Alaska's Public Employment Relations Act (the Act). An Alaska Labor Relations Agency (ALRA) panel concluded a violation occurred, and on appeal the superior court affirmed that ruling. But because the record does not support a finding of bad faith on the city's part, and because the failure to ratify the agreement alone cannot be a violation of the Act, we reverse the superior court's decision affirming the ALRA panel's ruling.

## II.   FACTS AND PROCEEDINGS

### A.    Facts

This case arises from disputed collective bargaining negotiations between City of Fairbanks and Public Safety Employees Association, AFSCME Local 803 (PSEA). PSEA is the labor representative for the City's police and dispatch employees.

The City is governed by a home-rule charter vesting "executive and administrative power" in the mayor[1] and "all [other] powers" in the city council.[2] In 2013 the City and PSEA began negotiating a collective bargaining agreement for fiscal years 2014 through 2017. Then-Mayor John Eberhart was the lead negotiator for the

---

[1]    Fairbanks City Charter § 4.1(b) (1995).

[2]    *Id.* § 1.2(a); *see also id.* § 1.3 ("The city shall have and may exercise all powers, functions, rights, privileges, franchises and immunities of every name and nature which a home-rule city may constitutionally possess in the State of Alaska.").

-2-                                                    7251

City's bargaining team,[3] and PSEA was represented by its internally selected bargaining team.

Mayor Eberhart and his bargaining team acted in concert with the city council during negotiations.[4] It is undisputed that negotiations could not move forward until the city council tentatively approved the City's bargaining position. During months of negotiations the City's bargaining team would reach tentative agreement on financial terms with PSEA and then would present those terms to the city council for tentative approval in executive session.

The negotiating teams reached a tentative agreement; on August 11, 2014, in accordance with a City ordinance,[5] the mayor presented the agreement to the city council in open public session for ratification as Ordinance 5953. The city council

---

[3]     *See* Fairbanks General Code Ordinance (FGCO) § 42-1(1)(a) (2011) ("The mayor shall have . . . the authority to negotiate with representatives of employee organizations representing city employees for the purpose of arriving at collective bargaining agreements as to wages, hours and terms or conditions of employment.").

[4]     *See id.* § 42-1(2)(c) ("The city council shall review and identify economic bargaining items upon which the mayor may commence negotiations; however, the mayor shall make no tentative agreement to any economic proposal which substantially deviates from the city council's approval prior to receiving further approval."); *id.* § 42-1(2)(d) ("The mayor shall provide the city council with periodic information reports which shall describe the status of pending negotiations.").

[5]     *See id.* § 42-1(2)(e) ("Upon completion of negotiations, the mayor shall, where applicable, present to the city council for ratification all tentatively agreed upon provisions in the replacement bargaining agreement.").

advanced the ordinance to its next regular meeting;[6] in the interim the PSEA membership voted to approve the agreement.

The city council heard public testimony about the agreement on August 25. Five people commented, focusing on the City's ability to fund the agreement, how the agreement would affect spending on other labor agreements, the need to attract new employees with higher wages, and the feasibility of reduced work hours. Council members then questioned City employees about the contract, focusing almost entirely on the proposed agreement's cost. The discussion ended with council members debating whether the agreement would save money or cost money in the long run and, if the latter, whether other benefits outweighed the cost. The city council ultimately voted 4 to 3 to adopt the ordinance, with Mayor Eberhart casting the tie-breaking vote. Before concluding the August 25 session, Mayor Eberhart introduced Ordinance 5955, which appropriated funds for the labor agreement. Ordinance 5955 was advanced by a 4 to 2 vote, and the meeting was adjourned at 12:05 a.m. on August 26.

On August 27 then-Council Member Jim Matherly filed a written notice of reconsideration of Ordinance 5953, apparently believing that, because the August 25 meeting had adjourned after midnight, a motion for reconsideration would remain timely through August 27. But the City Clerk rejected his motion as untimely because it was not filed within 24 hours of the vote.[7]

---

[6]  *See* Fairbanks City Charter § 3.3 ("Every ordinance shall be introduced in writing and, after advancement to second reading, shall be published in full or by title at least once, with notice of the time and place when and where it will be given a public hearing and be considered for passage.").

[7]  *See* FGCO § 2-120(g)(2) ("A member who voted on the prevailing side may . . . [o]n the day immediately following the vote on a resolution or ordinance, give the city clerk written notice of reconsideration."). Council Member Matherly had voted
(continued...)

Council Member Matherly took up the issue again at the city council's next meeting, on September 8, moving to suspend the rules of procedure to allow reconsideration of Ordinance 5953.[8] Council Member Hilling requested clarification on suspension of the rules, and the Mayor, City Attorney, and City Clerk provided clarification based on the Fairbanks General Code and Robert's Rules of Order. The motion to suspend the rules then passed by a 5 to 1 vote.

Once the city council rules were suspended, Council Member Hilling moved to reconsider Ordinance 5953. Council Member Matherly explained that after the August 25 vote he had reexamined the contract and that he was concerned it was overly costly to the City. He further explained that he thought his earlier motion to reconsider had been timely. Before voting on reconsideration, city council members asked several procedural questions of the Mayor, City Attorney, and City Clerk, including how many times an ordinance could be reconsidered and whether public comment was allowed prior to the vote. The three responded that an ordinance could be reconsidered only once regardless of the subsequent vote's outcome and that if the motion to reconsider carried, Ordinance 5953 would be reopened as if the original vote had never taken place. The City Clerk advised that allowing public comment was the city council's prerogative, and the city council then called for additional public comment before voting.

---

[7]    (...continued)
"yea" on Ordinance 5953.

[8]    *See id.* § 2-120(o) ("The city council rules and order of business shall be observed in all cases unless suspended temporarily for good cause by a vote of five members present. Any member may move at any time for the suspension of any rule, and such motion must be seconded to entitle it to consideration.").

Nine people commented on the motion to reconsider. Most comments were focused on the cost to the City; people commented that they thought the agreement was too expensive, that the City could not afford the agreement, and that the agreement's costs were greater than the City had been promised during negotiations. City council members then questioned City staff about the City's ability to pay under the agreement's terms. City employees reported that the cost of the agreement was likely higher than calculated during negotiations, that approving the agreement would result in pressure for higher wages in other collective bargaining agreements, and that costs would drastically increase if either party opted out of the agreement. The city council debated the motion, with all six council members focusing comments on the cost to the City. The city council then voted 4 to 2 to reconsider Ordinance 5953.

After the motion to reconsider carried, but before Ordinance 5953 was revoted on, Council Member Hilling moved to postpone the revote to the city council's September 22 meeting. The motion was amended to further postpone the revote to November 3, which Council Member Hilling praised as giving new city council members time to "get up to speed" on the contract dispute before voting.[9] The motion to postpone consideration of Ordinance 5953 carried 5 to 1. The city council then approved an amended version of the previously advanced funding Ordinance 5955, increasing the police department's funding by $5,939 but explicitly rejecting all increases contemplated in the tentative labor agreement.

---

[9] We judicially notice that a Fairbanks city council election was set to take place on October 7, 2014. We also notice that Council Member Hilling did not run for reelection, guaranteeing that at least one new council member was expected to be elected, and that Council Member Anderson ultimately was not reelected. *See Mullins v. Oates*, 179 P.3d 930, 936 n.10 (Alaska 2008) (taking judicial notice of reasonably indisputable fact on appeal).

On November 3 the newly constituted city council voted unanimously not to adopt Ordinance 5953; the proposed collective bargaining agreement with PSEA thus was not approved by the city council.

## B.    Proceedings

A week after the city council's final vote, PSEA filed a charge with the ALRA; PSEA asserted the City had refused to bargain in good faith.[10] PSEA requested that the ALRA find the city council's suspension of the rules and subsequent reconsideration of Ordinance 5953 was an unfair labor practice and order the City to let the tentative agreement stand as the final collective bargaining agreement between the City and PSEA. In April an ALRA hearing officer found probable cause to support the charge.

In November an ALRA three-member board panel decided 2 to 1 that the City had committed an unfair labor practice and ordered the city council to execute the collective bargaining agreement.[11] The ALRA panel concluded that: the City was accountable for all actions of the city council; the city council had unreasonably delayed, or "strung out," negotiations;[12] under the totality of the circumstances the city council's actions constituted bad faith; an enforceable contract was entered into between the City and PSEA after the first vote on August 25, 2014; the City had no valid excuse to rescind

---

[10]    *See* AS 23.40.110(a)(5) ("A public employer . . . may not . . . refuse to bargain collectively in good faith with an organization that is the exclusive representative of employees in an appropriate unit . . . .").

[11]    *Public Safety Emps. Ass'n, AFSCME Local 853, AFL-CIO v. City of Fairbanks*, ALRA Dec. No. 305 (Nov. 24, 2015) (Order 305).

[12]    An employer violates the Act by "stringing out" when it delays negotiations to obtain more favorable terms or to avoid agreement. *See Alaska Cmty. Colls.' Fed'n of Teachers Local No. 2404 v. Univ. of Alaska* (*CCFT*), 669 P.2d 1299, 1303 (Alaska 1983).

the contract; and the remedy for the violation was enforcement of the tentative agreement.[13] The ALRA panel ordered the City to "execute the collective bargaining agreement it reached with [PSEA], and that it ratified on August 25, 2014."[14]

The City appealed the ALRA panel's decision to the superior court. The superior court held that the city council could not be a public employer under the Act[15] but that the ALRA's material factual findings were supported by substantial evidence and the ALRA otherwise had authority to order execution of the tentative agreement.

PSEA appeals the superior court's ruling that the city council is not a public employer under the Act. The City cross-appeals the court's affirmance of the ALRA panel's finding of an unfair labor practice and its order that the City execute the collective bargaining agreement.

## III. STANDARD OF REVIEW

When a superior court acts as an intermediate appellate court in an administrative matter, "we independently review the merits of the agency's decision."[16] We review an agency's factual findings to determine "whether they are supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support" the agency's conclusion.[17] " 'We view the evidence in favor of the findings,' and we will not choose between competing inferences or evaluate

---

[13] *Id.* at 6-9.

[14] *Id.* at 9.

[15] *See* AS 23.40.250(7) (defining public employer under the Act).

[16] *State, Dep't of Admin., Div. of Ret. & Benefits v. Shea* (*Shea III*), 394 P.3d 524, 528-29 (Alaska 2017) (citing *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits* (*Shea II*), 267 P.3d 624, 630 (Alaska 2011)).

[17] *Id.* at 529 (quoting *Shea II*, 267 P.3d at 630).

the strength of the evidence."[18] "We will look only to determine if substantial evidence exists in the record, taking into account evidence in the record detracting from the supporting evidence's weight."[19] "The substantial evidence test is highly deferential, but we still review the entire record to ensure that the evidence *detracting* from the agency's decision is not *dramatically* disproportionate to the evidence supporting it such that we cannot 'conscientiously' find the evidence to be 'substantial.' "[20]

We review an agency's legal conclusions using our independent judgment only if "the agency's specialized knowledge and experience would not be particularly probative."[21] In all other cases we apply the "reasonable basis standard," deferring to an agency's legal interpretation "so long as it is reasonable."[22]

---

[18]  *Id.* (internal alterations and footnote omitted) (first quoting *Raad v. Alaska State Comm'n for Human Rights*, 86 P.3d 899, 903 (Alaska 2004); then citing *Shea II*, 267 P.3d at 630).

[19]  *Id.* (citing *Shea II*, 267 P.3d at 630).

[20]  *Shea II*, 267 P.3d at 634 n.40 (emphases in original) (quoting *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474, 488 (1951)); *see also id.* ("[A] court may [not] displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo. [But under the substantial evidence test,] a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view." (third alteration in original) (quoting *Universal Camera*, 340 U.S. at 488)).

[21]  *Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1082 (Alaska 2011) (quoting *Matanuska-Susitna Borough v. Hammond*, 726 P.2d 166, 175 (Alaska 1986)).

[22]  *Id.* (citing *Matanuska Susitna Borough*, 726 P.2d at 175).

The parties strenuously dispute the proper application of these principles to the issues in this case. The City urges us to use our independent judgment in determining whether the city council is a public employer and whether the ALRA had authority to order execution of the collective bargaining agreement. The City also argues that whether an unfair labor practice occurred is a legal question within the ALRA's expertise, subject to rational basis review. PSEA counters that we should review the first two questions under the rational basis standard, and that whether an unfair labor practice occurred is a factual question subject to the substantial evidence standard.

The ultimate issue we decide in the City's appeal is whether the City violated the Act by committing an unfair labor practice.[23] That is a legal question, well within the scope of the ALRA's "specialized knowledge and experience."[24] We therefore apply the reasonable basis standard to the ALRA panel's conclusion that the City violated AS 23.40.110(a)(5).[25] The factual findings the ALRA panel made in reaching that conclusion, including whether the City bargained in bad faith and whether it strung out negotiations, are reviewed for substantial evidence.[26]

PSEA's appeal does not require such deference. The city council is a public employer under the Act only if the city council is a "political subdivision of the

---

[23]     *See* AS 23.40.110(a)(5) ("A public employer or an agent of a public employer may not . . . refuse to bargain collectively in good faith with an organization that is the exclusive representative of employees in an appropriate unit . . . .").

[24]     *See Marathon Oil*, 254 P.3d at 1082; *see also Alaska Pub. Emps. Ass'n v. State*, 831 P.2d 1245, 1247 (Alaska 1992) (holding whether unfair labor practice occurred is legal question).

[25]     *See Marathon Oil*, 254 P.3d at 1082.

[26]     *See CCFT*, 669 P.2d 1299, 1302-03 (Alaska 1983) (reviewing for substantial evidence ALRA findings of no bad faith or stringing out).

state."[27] "Political subdivision" is a "non-technical statutory term" whose meaning can be determined without specialized agency expertise.[28] We therefore interpret the meaning of AS 23.40.250(7) using our independent judgment, adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[29]

## IV. DISCUSSION

### A. The City Council Is Not A Public Employer, But The ALRA's Unfair Labor Practice Order Was Against The City, Not The City Council.

After the superior court held that the city council is not a public employer — even while the court affirmed the ALRA panel's decision — the parties began disputing the significance of the superior court's holding. The City argues that "[b]ecause the [c]ity [c]ouncil is not a[n] [Act] public employer, there can be no unfair labor practice." PSEA argues that "ALRA's decision stands even if this Court finds that the [c]ity [c]ouncil is not a 'public employer,' " but it nonetheless contends that the superior court must be reversed.

Our analysis begins with the plain language of the Act. Section 110(a)(5) provides that a "public employer or an agent of a public employer may not . . . refuse to bargain collectively in good faith with an organization that is the exclusive representative of employees in an appropriate unit."[30] "Public employer" is defined in § 250(7) as:

> the state or a political subdivision of the state, including without limitation, a municipality, district, school district,

---

[27] *See* AS 23.40.250(7) (" '[P]ublic employer' means the state or a political subdivision of the state . . . .").

[28] *See City of Valdez v. State*, 372 P.3d 240, 247 (Alaska 2016).

[29] *Id.* at 246 (quoting *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 73 (Alaska 2013)).

[30] AS 23.40.110(a)(5).

regional educational attendance area, board of regents, public and quasi-public corporation, housing authority, or other authority established by law, and a person designated by the public employer to act in its interest in dealing with public employees.[31]

We first determine whether the city council is "a political subdivision of the state."[32]

The answer to this question is no. The term "political subdivision," as used throughout Alaska Statutes, does not contemplate legislative bodies as political subdivisions of the state. Instead, legislative bodies are treated as distinct subparts of a broader political subdivision, like a municipality. For instance, § 255 of the Act notes: "[The Act is] applicable to organized boroughs and political subdivisions of the state, home rule or otherwise, unless *the legislative body of the political subdivision*, by ordinance or resolution, rejects having the provisions . . . apply."[33] Similarly, AS 39.35.950 provides: "The request [to become an employer in the Public Employees' Retirement System plan] shall be made after adoption of a resolution by *the legislative body of the political subdivision* . . . ."[34] Also similarly, AS 26.23.500 provides: "A political subdivision may withdraw from participation in the Alaska instrastate mutual aid system . . . . To withdraw, *the governing board of a political subdivision* shall adopt

---

[31]     AS 23.40.250(7). Alaska Statute 23.40.250 contains the caveat that the definition applies "unless the context otherwise requires." But the context of § 110(a)(5) does not require a different definition than that provided in § 250(7), so this provision does not affect our analysis.

[32]     PSEA has not argued that the city council might be a "person" within the meaning of AS 23.40.250(7).

[33]     AS 23.40.255(a) (emphasis added).

[34]     AS 39.35.950 (emphasis added).

a resolution . . . ."[35] These are only a few examples of the distinction present in our statutes; the legislature has plainly not contemplated that legislative bodies are political subdivisions. Therefore the city council is not a public employer under the Act.

This holding, however, does not resolve the real issue in this case. The ALRA panel did not decide that the city council was a public employer — such a conclusion cannot be found in its finding of facts, conclusions of law, or analysis. On the contrary, its decision plainly states that "[t]he *City of Fairbanks* is a public employer under AS 23.40.250(7)"; "the *City of Fairbanks* violated AS 23.40.110(a)(5)"; and "[t]he process the *City* applied under the facts of this case supports a conclusion that it bargained in bad faith."[36]

What the ALRA panel did conclude is that the City should be held accountable for the city council's actions, and it did so by finely parsing whether the actions of a legislative body could be attributed to a political subdivision at large. First, the ALRA panel noted that "[i]n the typical scenario, employees of the executive branch of a state or political subdivision comprise the 'public employer' in a negotiating process."[37] Second, it determined that "the facts here indicate the [city council], the [C]ity's legislative branch, was actively involved in negotiations with PSEA."[38] Third, it concluded that "[t]his active involvement makes the [c]ouncil members' actions accountable in determining whether there was an unfair labor practice violation in this

---

[35] AS 26.23.500(b) (emphasis added).

[36] Order 305 at 7, 9 (emphases added).

[37] *Id.* at 6.

[38] *Id.*

-13- 7251

case."[39]  This reasoning was not a legal conclusion that the city council itself had become the public employer, but rather the ALRA panel's resolution of the "threshold issue" of "whether the [city council]'s actions in the collective bargaining process . . . constitute actions by a public employer under [the Act]."[40]

We therefore conclude the city council is not a public employer under the Act, but the ALRA panel's unfair labor practice finding was directly against the City. There is no dispute that the City is a public employer; as such we must decide the City's cross-appeal.

**B.      The Conclusion That The City Committed An Unfair Labor Practice Was Not Reasonable.**

The City's cross-appeal raises several legal and factual challenges to the ALRA panel's decision: (1) Ordinance 5953 was not ratified; (2) the city council did not circumvent City rules; (3) failure to ratify a tentative agreement is not an unfair labor practice; (4) there was no intent to string out negotiations; (5) the ALRA panel misconstrued the city council's role in negotiations; (6) the ALRA panel does not have the power to order a city to appropriate money; and (7) the ALRA panel could not rule on contract remedies because the tentative agreement's chosen forum was superior court.

We hold that the ALRA panel's bad faith finding is not supported by substantial evidence and that without such a finding it was unreasonable to conclude the City violated the Act.

**1.      The bad faith finding is not supported by substantial evidence.**

The ALRA panel concluded that "by striking a deal, ratifying that deal, and then stringing out and delaying the reconsideration process to ultimately attempt to deny

---

[39]     *Id.*

[40]     *Id.*

PSEA its due, the City violated the duty to bargain in good faith and committed an unfair labor practice." In support of its inference that the City "delay[ed] the reconsideration process to ultimately attempt to deny PSEA its due," the ALRA panel found that: (1) the city council had an active role in negotiations; (2) the city council authorized its negotiators to offer contract terms to PSEA; (3) the city council approved those contract terms as negotiations progressed; (4) the city council ratified those terms on August 25, 2014; (5) that ratification created an enforceable contract; (6) the city council undid the ratification two months later by invoking unusual procedures; (7) the City was bound to the tentative agreement's terms despite the reconsideration; and (8) the City had no excuse for changing or modifying those terms.[41] Because several of these findings are unsupported by "such relevant evidence as a reasonable mind might accept as adequate to support" them,[42] the bad faith finding is not supported by substantial evidence.

The ALRA panel's foundational error was finding that the city council ratified the tentative agreement at the August 25 session. Ordinance 5953 was reconsidered at the September 8 session; legally it was as if a vote on the Ordinance had never been taken.[43] The ALRA panel's Decision and Order does not adequately reckon

---

[41] Order 305 at 7-8.

[42] *See Shea III*, 394 P.3d 524, 529 (Alaska 2017) (quoting *Shea II*, 267 P.3d 624, 630 (Alaska 2011)).

[43] *See* Fairbanks City Charter § 2.10 ("The council, by ordinance, shall determine its own rules of procedure . . . ."); FGCO § 2-120(g) ("When a motion is reconsidered, that vote is canceled as though it had never been taken."); *see also* HENRY M. ROBERT III ET AL., ROBERT'S RULES OF ORDER NEWLY REVISED 324 (11th ed., Da Capo Press 2011) ("The effect of the adoption of the motion to *Reconsider* is immediately to place before the assembly again the question on which the vote is to be
(continued...)

with these facts "detracting from the supporting evidence's weight";[44] "the evidence *detracting* from the agency's decision is . . . *dramatically* disproportionate to the evidence supporting it."[45] This error seems to have infected the remainder of the ALRA panel's analysis, causing it to inaccurately frame the facts. Rather than treating the reconsideration as a legitimate part of the legislative process, the ALRA panel characterized the city council as "invoking unusual procedures" to "deny PSEA its due."[46] The ALRA panel found that the suspension, reconsideration, postponement, and ultimate rejection of Ordinance 5953 constituted "stringing out" — a violation of the duty to "sincere[ly] desire to reach an agreement."[47] In other words, bad faith.

We do not think "reasonable minds might accept the administrative agency's decision" here "in light of the whole record."[48] Because there is a "presumption that proceedings of the governing body of a municipality have been conducted in accordance with law,"[49] a finding of stringing out requires evidence in the record that

---

[43]     (...continued)
reconsidered — in the exact position it occupied the moment before it was voted on originally." (emphasis in original)).

[44]     *See Shea III*, 394 P.3d at 529 (citing *Shea II*, 267 P.3d at 630).

[45]     *See Shea II*, 267 P.3d at 634 n.40 (emphases in original).

[46]     Order 305 at 7.

[47]     *Id.* at 6-7.

[48]     *See Cassel v. State, Dep't of Admin.*, 14 P.3d 278, 282 (Alaska 2000).

[49]     *Liberati v. Bristol Bay Borough*, 584 P.2d 1115, 1118 (Alaska 1978) (citing CHESTER JAMES ANTIEAU, MUNICIPAL CORPORATION LAW § 4.19, at 4-38 (3d ed. 1978)); *see also McCormick v. City of Dillingham*, 16 P.3d 735, 738 (Alaska 2001); *City of St. Mary's v. St. Mary's Native Corp.*, 9 P.3d 1002, 1008 & n.25 (Alaska 2000).

either the city council violated its own laws or that the delay in reconsideration was intended to force different terms from PSEA. The record supports neither inference.

First, as to violating the City's own laws, PSEA conceded at oral argument before us that nothing improper occurred, save that it argued the city council did not have good cause to suspend the rules of procedure. The ALRA panel too made no findings of fact to overcome the presumption of regularity, finding only that the procedures the city council invoked were "unusual," not unlawful.[50] Our own review of the city council's rules of procedure and the administrative record confirms that the city council at all times acted on advice of counsel, with strict attention to observing its rules of procedure and Robert's Rules of Order. We see nothing illegal or improper with the City's process in suspending its rules to allow reconsideration of Ordinance 5953.

"Good cause," moreover, is not the sort of procedural standard amenable to searching judicial review. We have noted that "questions regarding 'legislative rules' are nonjusticiable, absent exceptional circumstances, as the constitution specifically commits to the legislature the authority to provide for its own rules of procedure."[51] Though we are not concerned here with the justiciability of the city council's rules of procedure themselves, we will not second-guess whether the city council had good cause to suspend its rules absent an ALRA finding that no good cause existed.[52] There certainly are no findings of fact allowing an inference of stringing out solely based on procedural irregularity.

---

[50]    Order 305 at 7.

[51]    *Walleri v. City of Fairbanks*, 964 P.2d 463, 468 n.4 (Alaska 1998).

[52]    *See generally* Order 305 (failing to identify any violation of city council procedure).

Because the city council did not violate its own laws, the remaining argument for a stringing out inference would be that the City used otherwise lawful procedures to delay ratification and force PSEA to accept less favorable terms or to avoid reaching agreement entirely. The City concedes this is the best interpretation of the ALRA panel's decision. But again the "whole record" does not support such a finding.[53]

The ALRA panel identified no evidence in the record directly supporting its finding of intent to string out negotiations.[54] It instead inferred stringing out had occurred based on the city council "ratifying those terms and the entire agreement at a public meeting, only to reverse all of its previous actions and undo the ratified agreement by rejecting those terms more than two months after ratification by invoking unusual procedures."[55] Before us at oral argument PSEA also asserted that the reversal process's length made the city council's actions problematic, but when asked whether any evidence in the record indicated the delay was not solely due to financial concerns, PSEA's counsel responded, "I can't think of any." Counsel pointed to the initial August ratification, followed by the delay until after the October election, before the final contract rejection in November, as the source of the stringing out finding.

PSEA argues that, under our deferential standard of review, this is sufficient: ALRA was entitled to infer stringing out from the process alone. PSEA also urges us to consider the city council's actions throughout the negotiations as an example

---

[53] *See Cassel v. State, Dep't of Admin.*, 14 P.3d 278, 282 (Alaska 2000) (explaining that substantial evidence review must take place "in light of the whole record").

[54] *See generally* Order 305 (failing to identify explicit intent to string out). This is unsurprising; only a malevolent or incompetent public employer would declaim that it wanted to bargain in bad faith.

[55] *Id.* at 7.

of an employer shifting positions, pointing to the tentative approvals in executive sessions as an indication that the city council accepted the agreement's financial implications before "unfairly revers[ing] its position." And PSEA correctly points out that we "will not choose between competing inferences or evaluate the strength of the evidence"[56] when we examine whether substantial evidence exists, arguing that we cannot reach a different inference from the gap in time between August 25 and November 3.

But the record ultimately cannot bear the inference that PSEA would like it to, for four reasons. First, the city council's directives during the bargaining process were necessarily tentative, just as the PSEA bargaining team's agreement was tentative and subject to a membership vote. The analogy to an employer shifting positions during negotiations is inappropriate because formal approval could be taken only at a meeting that was open to the public, in accordance with Alaska's Open Meetings Act.[57] Second, there is no evidence in the record that the city council was aware of the higher cost estimates when it tentatively approved sections of the agreement in executive sessions; on the contrary, until the August 25 meeting the city council appears to have had only the City Finance Department's projections. It was only after public comment and additional information from staff that the city council realized the City might not be able to afford the agreement. Third, there is no evidence in the record that the city council voted for reconsideration for any reason other than concern about managing the City's

---

[56]     *Shea III*, 394 P.3d 524, 529 (Alaska 2017) (citing *Shea II*, 267 P.3d 624, 630 (Alaska 2011)).

[57]     *See* AS 44.62.310; *see also* FGCO § 2-148 ("When under consideration, all persons interested may submit their views on proposed ordinances and resolutions by letter filed with the city clerk. In the city council's discretion, interested persons may also be heard orally.").

finances. The agency record demonstrates that most of the public testimony concerned cost to the City, that nearly all the questioning of City employees pertained to the agreement's ultimate cost, and that the council members based their votes on their assessment of the City's ability to pay. Fourth, there is no evidence in the record that postponing the ratification vote to November was for any reason other than giving the city council time to reassess the contract, taking into account the municipal election scheduled for October and that incoming council members needed time to understand the contract.[58] On this record "the evidence *detracting* from the agency's decision is . . . *dramatically* disproportionate to the evidence supporting it such that we cannot 'conscientiously' find the evidence supporting the decision to be 'substantial.' "[59] A "reasonable mind" could not conclude that the city council's actions were motivated by bad faith.[60]

Ultimately, the ALRA panel inferred bad faith because it treated the city council's actions like those of a private employer. But legislative bodies are not like private employers; they are not even like the executive branch of a public employer. The city council is a political, legislative body, chosen by the city's residents to represent their interests. When constituents inform their representatives that they believe the City cannot afford an agreement, it is not improper for the city council to reevaluate and vote against that agreement, even despite a previous tentative approval. Such an action is not bad faith, but rather a reflection of the political process. That action is no different from PSEA submitting a tentative agreement to its members for approval and discovering that

---

[58] *See supra* note 9.

[59] *See Shea II*, 267 P.3d at 634 n.40 (emphases in original) (quoting *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474, 488 (1951)).

[60] *See Shea III*, 394 P.3d at 529 (quoting *Shea II*, 267 P.3d at 630).

its own members do not favor it. Any other rule would shut the public out of participating in the City's financial business.

The ALRA panel's bad faith finding is not supported by substantial evidence.

**2.     It was not reasonable to conclude that the City violated the Act.**

Having concluded the ALRA panel's bad faith finding is not supported by substantial evidence, we now turn to its legal conclusion that the City violated the Act.

Section 110(a)(5) of the Act provides: "A public employer or an agent of a public employer may not . . . refuse to bargain collectively in good faith with an organization that is the exclusive representative of employees in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative."[61] The ALRA panel interpreted this statute as meaning that a public employer has "an 'obligation . . . to participate actively in the deliberations so as to indicate a present intention to find a basis for agreement.' "[62] Applying the reasonable basis standard of review, we conclude this understanding of § 110(a)(5) is a reasonable interpretation of "good faith," as it matches persuasive federal interpretations of the National Labor Relations Act.[63]

---

[61]     AS 23.40.110(a)(5).

[62]     Order 305 at 7 (alteration in original) (quoting ABA SECTION OF LABOR AND EMPLOYMENT LAW, THE DEVELOPING LABOR LAW 914-15 (JOHN E. HIGGINS, JR. ED., 6th ed. 2012) and cases cited therein).

[63]     *See* NATIONAL LABOR RELATIONS BOARD, NLRB CASE HANDLING MANUAL, ¶ 30,019 Section 10(J) Proceedings Under the NLRA, 2015 WL 7377488 (2015) (quoting *N.L.R.B. v. Montgomery Ward & Co.*, 133 F.2d 676, 686 (9th Cir. 1943)); *see also CCFT*, 669 P.2d 1299, 1302 n.1 (Alaska 1983) ("[W]e will consider the experiences of the National Labor Relations Board 'in remedying unfair labor practices
(continued...)

No violation of the Act occurred in this case. The ALRA panel's fact findings, removing those unsupported by substantial evidence, establish only that the city council chose not to ratify Ordinance 5953 after hearing from the public and being persuaded that it would be too costly to the City. Such a failure to ratify alone does not evince a lack of "present intention to find a basis for agreement."[64] Thus, having concluded the ALRA panel's bad faith finding is unsupported by substantial evidence, we cannot affirm the agency's conclusion based solely on the failure to ratify.

Concluding that the City violated the Act was unreasonable.[65]

## V.    CONCLUSION

We REVERSE the superior court's decision affirming the ALRA panel's order.

---

[63]    (...continued)
to be highly relevant to the performance of those functions by locally created labor boards . . . .' " (quoting *Alaska Pub. Emps. Ass'n v. Municipality of Anchorage*, 555 P.2d 552, 553 (Alaska 1976))).

[64]    *See Alaska Cmty. Colls.' Fed'n of Teachers, Local No. 2404 v. Univ. of Alaska*, ALRA Dec. No. 54, ULPC 79-4 (Oct. 26, 1979), *aff'd CCFT*, 669 P.2d at 1303; *see also Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1082 (Alaska 2011) ("We give more deference to agency interpretations that are 'longstanding and continuous.' " (quoting *Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1119 (Alaska 2007))).

[65]    In addition to challenging the findings and conclusions discussed above, the City argues that the ALRA has no authority to order a legislative body to spend money and that the ALRA had no jurisdiction in this case because the tentative agreement's chosen forum was the superior court. Because we hold that the ALRA panel could not reasonably conclude the City committed an unfair labor practice, we do not need to resolve these issues to reach our decision.

BOLGER, Justice, with whom MAASSEN, Justice, joins, dissenting.

I believe the Alaska Labor Relations Agency (ALRA) reasonably concluded that the City of Fairbanks committed an unfair labor practice. The findings of the ALRA on this issue were quite specific:

> The issue under the specific facts of this case is, did the City Council, in its active role in negotiations, drive the City to act in bad faith by authorizing its negotiators to offer contract terms to PSEA, then approving those terms as negotiations progressed, and finally ratifying those terms and the entire agreement at a public meeting, only to reverse all of its previous actions and undo the ratified agreement by rejecting those terms more than two months after ratification by invoking unusual procedures. We find that by striking a deal, ratifying that deal, and then stringing out and delaying the reconsideration process to ultimately attempt to deny PSEA its due, the City violated the duty to bargain in good faith and committed an unfair labor practice.

Each of these findings is supported by substantial evidence in the agency record. The city council did authorize its negotiators to offer and approve specific contract terms as the negotiations progressed and then approved the entire agreement at a public meeting. The council did not follow its normal process for reconsideration; instead, it allowed the motion for reconsideration to be accepted late. Then it reconsidered and rejected the terms it had twice previously approved. Based on this record, the ALRA could reasonably conclude that the council had bargained in bad faith. Since these findings are supported by substantial evidence, we are required to defer to the agency's decision.[1]

---

[1]      *State, Dep't of Admin., Div. of Ret. & Benefits v. Shea*, 394 P.3d 524, 529 (Alaska 2017).

The court's opinion relies on the "presumption that proceedings of the governing body of a municipality have been conducted in accordance with law."[2] The opinion notes that "the city council's directives during the bargaining process were necessarily tentative," that the reconsideration decision was based on new financial estimates, and that there was no evidence contradicting the City's asserted reasons for reconsideration and delay.[3] The opinion then concludes that PSEA did not overcome the presumption that the City was acting in good faith.

But the presumption of regularity does not shield the council's actions from legal scrutiny.[4] Based on PSEA's complaint, the ALRA was required to determine whether the City had committed an unfair labor practice.[5] In order to fulfill this responsibility, it was required to make a factual finding about whether the council was acting in good faith.[6] The ALRA was not required to accept the City's explanations for the council's behavior. And the fact that the council followed the statutes and ordinances for scheduling, review, and reconsideration of the agreement does not mean that the

---

[2]   Op. at 16 (quoting *Liberati v. Bristol Bay Borough*, 584 P.2d 1115, 1118 (Alaska 1978)).

[3]   Op. at 19-20.

[4]   *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971) (stating that the presumption of regularity does "not shield [agency] action from a thorough, probing, in-depth review"); *see also Wright v. State*, 501 P.2d 1360, 1372 (Alaska 1972) ("*Where no evidence indicating otherwise is produced*, the presumption of regularity supports the official acts of public officers . . . ." (emphasis added) (quoting *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960))).

[5]   *See* AS 23.40.130 (requiring the ALRA to investigate all complaints alleging unfair labor practices).

[6]   *See* AS 23.40.110(a)(5) (defining unfair labor practice to include a "refus[al] to bargain collectively in good faith").

council was acting in good faith.  The evidence that the ALRA relied on could reasonably support the opposite conclusion.

I conclude that there was substantial evidence supporting the ALRA's finding that the City did not bargain in good faith.